Fuld, J.
This case is before us on remand from the United States Supreme Court. When it was previously here (3 F Y 2d 511), we concluded that a tax lien asserted by the United States was superior to claims advanced by subcontractors and, in consequence, held the Government entitled to a sum of money owed under a general construction contract performed by the taxpayer. The Supreme Court, believing that we had slighted State law and given undue emphasis to Federal decisions, vacated the judgment and remanded the case for further consideration (363 U. S. 509).
Fleetwood Paving Corporation owes the United States Government a sum of money representing unpaid withholding and social security taxes. In December, 1951, and March, 1952, the local Collector of Internal Revenue received assessment lists including assessments against Fleetwood. Some time later, Fleetwood, as general contractor, agreed with one Ada Bottone to remodel a restaurant which she owned. Thereafter, in the summer of 1952, Fleetwood entered into subcontracts with Home Maintenance Company and Colonial Sand and Stone Company to furnish labor and materials for the remodeling job.
*274 On October 31,1952, some days before the subcontractors, who had completed their work, filed their respective notices of mechanic’s liens against the owner’s realty, notice of the Federal tax liens was filed against Fleetwood. The owner thereupon deposited in court the sum of $2,200, which she still owed Fleetwood, and it is this fund which the competing claimants seek.
The courts below, each giving different reasons, denied the Government’s claim of priority for its tax lien and granted the plaintiffs’ motions for summary judgment. We reached a contrary decision; it was our opinion that the Government’s lien was asserted against the indebtedness of the owner to the contractor-taxpayer and that such indebtedness constituted ‘ ‘ property ” and “ rights to property,” as those terms are used in the controlling Federal statute (Internal Revenue Code of 1939, IT. S. Code, tit. 26, § 3670 [now numbered § 6321]).
As indicated above, the Supreme Court found our approach to the resolution of the problem unsatisfactory. In United States v. Bess (357 U. S. 51), the court had explicitly declared that section 3670 of the Internal Revenue Code “ creates no property rights but merely attaches consequences, federally defined, to rights created under state law ” (p. 55). Quoting this language, the Supreme Court sent the present case back to us so that we might ‘ ‘ ascertain the property interests of the taxpayer under state law ” and then apply Federal law to determine the priority of the competing claims (363 U. S., at pp. 515-516). More specifically, we were directed to explore the meaning and impact of former section 36-a of our Lien Law and to determine whether under its terms the contractor-taxpayer holds bare legal title to the sum due from the owner, as trustee for the subcontractors, or whether it has full ownership of the debt, subject only to a lien in favor of the subcontractors.
It is to be noted at the outset that we are called upon to construe a statute no longer on the books and deal with law as it existed between 1942 and 1959. Section 36-a of the Lien Law, enacted in 1930, was repealed in 1959, its provisions, with modifications, being transferred to a new article 3-A. (L. 1959, ch. 696, enacting Lien Law, §§ 70-79; see 1959 Report of N. Y. Law Rev. Comm., p. 185; N. Y. Legis. Doc., 1959, No. 65 [F].) *275 Section 36-a was one among a series of provisions of the Lien Law directed against various injurious and irresponsible practices in the construction industry. Chief among the evils sought to be eradicated was that of “ pyramiding,” a practice whereby owners or contractors use money advanced in the course of one project, as loans or as contract payments, to commence or complete another project. In the case of a contractor, the so-called trust fund provisions of the Lien Law prohibited diversion, to purposes unrelated to a particular improvement, of contract payments from the owner which were intended to pay the expense of that improvement, including the cost of labor and materials. (See 1942 Report of N. Y. Law Rev. Comm., pp. 298-306; N. Y. Legis. Doc., 1942, No. 65 [H], pp. 28-36.)
The device which the Legislature used, throughout all the versions of section 36-a, to attempt to prevent the misuse of building contract payments was that of declaring that “ The funds received by a contractor from an owner for the improvement of real property * * * constitute trust funds in the hands of such contractor to be applied first to the payment of claims of subcontractors * * * laborers and materialmen arising out of the improvement”. If this legislative declaration and the legislative history of the trust fund provisions were all that were before us, the conclusion that the fund at issue in this case is the res of a trust held by the contractor rather than his own property would be relatively free from doubt. The fact is, however, that various other provisions of the statute, as well as a number of cases decided by this and other courts, complicate our decision.
In its earliest version, section 36-a, after designating the moneys received by the contractor a “ trust fund”, prescribed only one means of enforcing the trust, namely, by criminal prosecution. As originally enacted in 1930, the section provided that “ any contractor * * * who applies or consents to the application of such [trust] funds for any other purpose [than the payment of the claims of the statutory beneficiaries] and fails to pay the claims hereinbefore mentioned is guilty of larceny ”. On the basis of this language, this court, after disposing of the case on other grounds, stated in Raymond Concrete Pile Co. v. Federation Bank & Trust Co. (288 N. Y. 452, 462), that “ The purpose of the sections [25-a and 36-a] * * * *276 is solely penal and not to provide civil remedies.” This statement, as well as others similar to it, has been heavily relied upon in a number of cases. (See, e.g., Gramatan-Sullivan v. Koslow, 240 F. 2d 523, 525; Matter of Case v. Panzarella, 27 Misc 2d 854, affd. 266 App. Div. 962; Travis v. Nansen, 176 Misc. 44.)
However, the primary ground for decision in the Raymond Concrete case was that the statutory beneficiaries of the Lien Law trust were not privileged to trace payments made to the contractor-trustee into the hands of an assignee for value, absent proof that the assignee had actual notice of the existence of unpaid claims for supplies and materials (288 N. Y., at p. 459). This holding, as distinguished from the dicta in the case, clearly supports the view that a section 36-a contractor-trustee holds the funds he receives as trustee, rather than as owner, until he has paid the claims of all of the statutory beneficiaries.
In any event, though, even if we were to accept the dicta of Raymond Concrete as authoritative and treat the ease as holding that the provisions of the Lien Law did not provide for a true trust since they did not allow for a civil remedy, the holding must be limited to sections 25-a and 36-a as they read before 1942. In that year, 1942, the Legislature amended section 36-a by adding the following language:
“ Such trust may be enforced by civil action maintained as provided in article three-a of this chapter by any person entitled to share in the fund, whether or not he shall have filed, or had the right to file, a notice of lien or shall have recovered a judgment for a claim arising out of the improvement. For the purpose of a civil action only, the trust funds shall include the right of action upon an obligation for moneys due or to become due to a contractor ’ ’.
And a new article 3-A was added to the Lien Law, entitled “ Enforcement of Trusts ” (L. 1942, ch. 808), to provide, among other matters, that the trust provisions may be enforced by a ‘ ‘ representative action brought for the benefit of all persons entitled to share in the [trust] fund ” (Lien Law, § 71).
Although these 1942 amendments seem, on their face, to be designed to overcome the effect of the dicta in the Raymond Concrete case (288 N. Y. 452, supra), the fact is that they were prepared before the decision was handed down. Actually, the *277 amendments were designed to resolve problems raised by Wickes Boiler Co. v. Godfrey-Keeler Co. (116 F. 2d 842) and Amiesite Constr. Co. v. Luciano Contr. Co. (284 N. Y. 223). (See 1942 Report of N. Y. Law Rev. Comm., pp. 297-298; N. Y. Legis. Doc., 1942, No. 65 [H], pp. 27-28.) In the former case, the trust benefits under the Lien Law were held to be available only to those who had perfected mechanic’s liens, and, in the latter case, it was decided that a subcontractor’s right to moneys owing to a contractor, but still in the hands of the State—which had contracted for the improvement—was inferior to that of the contractor’s assignee.
The 1942 amendments clarified the situation. They established beyond dispute, first, that subcontractors and other statutory beneficiaries could enforce their interest11 whether or not ” they had filed a notice of lien and, second, that the res of the trust included a ‘ ‘ right of action upon an obligation for moneys due or to become due to [the] contractor ”. Not only did these amendments put an end to the limitations placed upon the statutory trust fund provisions in the Wickes Boiler Co. ease (116 F. 2d 842, supra) and the Amiesite Constr. Co. case (284 N. Y. 223, supra), but they overcame the dicta in the Raymond Concrete case (288 N. Y. 452, supra). (See 1958 Report of N. Y. Law Rev. Comm., p. 520; N. Y. Legis. Doc., 1958, No. 65 [F], p. 16; Metropolitan Cas. Ins. Co. v. Barr Wrecking Corp., 180 Misc. 200, 203-204, per Froessel, J.)
Even after the 1942 amendments, however, some cases continued to question whether the rights and duties of the contractor-trustee under the Lien Law trust fund provisions were comparable to those of a trustee of a trust of the usual sort. Chief among such cases was Gramatan-Sullivan v. Koslow (240 F. 2d 523, supra). A contractor, indebted to the defendant, had paid him money which he had received from the owner under a contract to improve his property. The plaintiff, a subcontractor, sought to recover from the defendant the full amount of his claim against the contractor on the ground that the latter had held the fund as trustee. The Court of Appeals for the Second Circuit, although allowing recovery for claims which had matured before the defendant received the funds, refused recovery as to the subcontractor’s claims which had not matured as of that time. Relying heavily on the Raymond Concrete case *278 (288 N. Y. 452, supra), the court wrote that “no * * * more was intended [by the 1942 amendments to section 36-a] than to attach the civil sanction to the same liability to which the criminal sanction already attached ” (240 F. 2d, at p. 527). Furthermore, reasoned the court, since the Raymond Concrete case held that it was a necessary condition of criminal liability that the contractor who diverted funds be in default in the payment of a claim and, since there could be no default as to claims which have not arisen, there could be no civil liability in favor of one whose claims had not matured at the time of the diversion (240 F. 2d, at pp. 525-526).
In other words, it was the view of the Federal court in the Gramatan case that the trust arose only after claims for payment had matured and it only extended, at any particular time, to the funds then necessary to satisfy mature claims then outstanding. Thus, the court not only declared that “ the [section 36-a] trust is not of the usual kind ”, but went on to say that “it is [not a] breach of trust for the contractor * * * to use any of the payments for his own purposes ” while the work was still in progress (240 F. 2d, at pp. 525-526). Although we agree that the statutory trusts set up by the Lien Law are “ not of the usual kind ’ ’, it is our opinion that Gramatan went far beyond both our statute and our cases in its description of the degree of control and interest which a statutory trustee has in the trust fund.
In the first place, it placed undue reliance on the dicta in the Raymond Concrete case (288 N. Y. 452, supra) concerning the extent of criminal liability. Raymond Concrete was, after all, a civil and not a criminal suit. Furthermore, the only claim there in issue had actually matured at the time of the asserted diversion of trust funds (288 N. Y. 452, 456, supra). Under these circumstances, what the court said about the contractor not being criminally liable for a diversion of trust funds at a time when no statutory beneficiary holds an unmatured claim was beside the point.
In the second place, the view espoused in the Gramatan case does not comport with either the language or the design of the legislation. The policy proclaimed by our statute is to protect those whose skill, labor and materials made possible the performance of a construction contract and who in fact, creating *279 the improvement, actually gave rise to the owner’s obligation to pay. The Legislature sought to assure that the funds received from an owner should “reach [their] ultimate destination — material and labor”. (See 1942 Report of N. Y. Law Rev. Comm., pp. 298-300; N. Y. Legis. Doc., 1942, No. 65 [H], pp. 28-30.) It is difficult to believe that the Legislature would have designated the fund concerned a ‘ ‘ trust ’ ’ and yet intended the trust to arise only when the claims of the statutory beneficiaries had matured. This would have been to provide a protection which would not protect.
The rule that the funds of an express trust may not be diverted to nontrust purposes, whether or not claims of beneficiaries are outstanding and whether or not the diversion is subsequently remedied, serves the purpose of closing the door to a violation of the trust purpose before the violation can arise. However proper the intentions of the trustee, if he is empowered to make nice calculations about how far he may use the trust for his own purposes before the need to pay beneficiaries arises, the danger exists that the beneficiaries may suffer loss as a result of miscalculation or other untoward contingencies. There is no good reason to suppose that the Legislature, by declaring payments to a contractor to be “ trust funds ’ ’, did not intend thereby to avoid the very same possibilities of harm to the statutory beneficiaries as was intended by the rule against diversion of the funds of an express trust.
The wording of section 36-a is, unfortunately, not as clear as it could be. The section renders a contractor guilty of larceny if he “ applies or consents to the application of such funds for any other purpose [than satisfying the claims of the statutory beneficiaries] and fails to pay [such] claims ”. It was this seeming conjunction of consent to the diversion of trust funds and subsequent failure to pay which led the court in the Raymond Concrete case to interpolate that “ Nothing in the section bars the contractor from using the moneys received for any purpose he may see fit provided he does not fail to pay all such claims out of other moneys which he may then have or which he may afterwards receive ” (288 N. Y., at p. 459).
It must be borne in mind, however, that this statement was made by the court in discussing a hypothetical possibility of criminal responsibility and, consequently, the court was *280 applying the rule of “ strict ” construction generally invoked in such cases. In the light of the subsequent 1942 amendments which created a form of civil liability, particularly in view of the Legislature’s explicit declaration that these provisions “ be construed liberally to secure [their] beneficial interests and purposes ” (Lien Law, § 23) and its frequently repeated concern for the plight of the statutory beneficiaries, the court’s reading of the statute in the Raymond Concrete case is no longer either supportable or permissible. The statutory words of conjunction must be read as meaning no more than that the Legislature envisages that a failure to pay claims is a strong, almost invariable, consequence of a diversion of trust funds and that the diversion is prohibited in order to avoid its almost certain consequence.
However valid, therefore, the conclusion may once have been that the section did not bar the contractor from using the moneys received for any purpose he chose, we hold that it is no longer applicable under the statute as it was amended in 1942. The only purposes for which the contractor may use the funds are trust purposes. In other words, such funds are to be “ applied first ” to the payment of the statutory beneficiaries. The contractor has a beneficial interest only in so much of the proceeds as remain after the claims of all beneficiaries have been settled.
The only features of this trust which make it at all exceptionable, which—to cull from the language of the GramatanSullivan case (240 F. 2d 523, 525, supra)—indicate that it is “ not a trust of the usual kind” are (1) that the contractor-trustee is not under the necessity of holding the fund intact until the improvement is completed, required as he is to pay the claims of the subcontractors as they mature; (2) that the contractor-trustee may, under specified conditions, assign his rights to future payments due from an owner (Lien Law, § 13, subd. [1-a]; Arrow Iron Works v. Greene, 260 N. Y. 330, 340); (3) that the contractor-trustee is privileged to commingle funds (Lien Law, § 36-a); and (4) that the remedy available is a class action rather than one prosecutable by an individual (Lien Law, § 71). In our judgment, none of these items gives the contractor-trustee such a beneficial interest in the fund as to constitute him its owner rather than its trustee.
*281 As to the first item, the power given the contractor to “ dip into ” the trust fund in order to satisfy subcontractors’ claims as they arise is no more than a necessity of his doing business and it is comparable to an express direction in the usual trust to favor one class of beneficiaries over another. As to the second item, a contractor may, it is true, assign moneys due under his contract, but he may do so, subdivision (6) of section 13 of the Lien Law specifies, only by covenanting that 11 he will receive any moneys advanced * * ° and will hold the right to receive such moneys as trust funds to be first applied to the payment of trust claims ”. This provision represents but another attempt to adjust the trust concept to the exigencies of the contracting business by allowing for interim financing. It does not, however, weaken the trust concept, since its only effect is to substitute the proceeds of the assignment for the moneys due or to become due from the owner as the trust fund to which suppliers of labor and material may look for payment. As to the contractor-trustee’s power to commingle funds, the third feature remarked, the degree to which it represents a departure from normal trust principles is considerably mitigated by the elaborate provisions found in the statute for accounting for trust proceeds and expenditures (Lien Law, § 36-d). And, finally, concerning the fourth feature, although the circumstance that the civil remedy provided is a class action may somewhat diminish a beneficiary’s rights, it cannot be said that it gives the trustee a property right in the fund or adds one iota to his power to control it.
Our construction of the trust fund provisions of the Lien Law is consonant with this State’s legislative policy of protecting laborers and materialmen as evidenced in the original enactment of those provisions and the numerous amendments — including indeed those enacted in 1959 — designed to make them more effective. It also constitutes a reaffirmation of the policy reflected by this court’s recent decisions in this area. (See, e.g., Cranford Co. v. Leopold & Co., 298 N. Y. 676; United States Fid. Guar. Co. v. Triborough Bridge Auth., 297 N. Y. 31; see, also, Seligson, Creditors’ Bights, 1957 Annual Survey of American Law, pp. 323-334; Seligson, Creditors’ Bights, 36 N. Y. U. L. Rev. 601, 612.)
*282 Our conclusion, then, is that, as a matter of New York law, a contractor does not have a sufficient beneficial interest in the moneys, due or to become due from the owner under the contract, to give him a property right in them, except insofar as there is a balance remaining after all subcontractors and other statutory beneficiaries have been paid. This being so, it follows that the tax lien herein asserted by the Government against the property of the contractor-taxpayer is ineffective to reach such moneys and that the plaintiff subcontractors are entitled to the court-deposited fund.
The judgment of the Appellate Division should be affirmed, with costs.
Chief Judge Desmond and Judges Dye, Froessel, Van Voorhis, Burke and Foster concur.
Judgment affirmed.