Ralph I. **SELBY**, Trustee in Bankruptcy for the Frimberger Corporation, Plaintiff-Appellant,

v.

**FORD MOTOR COMPANY et al.,** Defendants-Appellees.

No. 76–1711.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 3, 1978.

Decided Jan. 11, 1979.

Frederick William Heath, Shea, Shea & Heath, Birmingham, Mich., for plaintiff-appellant.

Keith C. Hennessee, D. E. Cutler, Dearborn, Mich., for Ford Motor.

Gary A. Goldberg, Michael L. Stefani, Keywell & Rosenfeld, Birmingham, Mich., for Clark Equip.

Robert B. Pierce, Gary Pollack, Detroit, Mich., for D. P. Brown.

Ronald L. Rose, Sara S. Beale, Detroit, Mich., Timothy A. Fusco, Troy, Mich., for D. O. James Gear.

Alexander C. Perinoff, Southfield, Mich., for Chain Supply.

Howard A. Serlin, Detroit, Mich., for Johansen Co. & Westfield Sheet.

Jay Deutch, Barry R. Bess, Southfield, Mich., for Production Industries.

Andrew J. Broder, Troy, Mich., for Brotherton Const. Co. & Applied Handling.

Donald C. Morgan, Detroit, Mich., for Webster Manufacturing.

B. Kingsley Buhl, Detroit, Mich., for Ferguson Iron Works.

Harold O. Love, Harper Woods, Mich., for J.I.C. Electric, Inc.

Donald A. Hertlein, Columbus, Ohio, for American Crane & Conveyor Co. [David B. Lehman].

Robert Rooyakker, Troy, Mich., Charles E. Keller, Detroit, Mich., for Elbee Inc.

David E. Kempner, Detroit, Mich., for Unified Industries.

Before WEICK, EDWARDS and MERRITT, Circuit Judges.

MERRITT, Circuit Judge.

The trustee in bankruptcy for a general contractor appeals a decision by District Judge Joiner declining to set aside as preferences under § 60 of the Bankruptcy Act payments made by the contractor and by the owner of a construction project to subcontractors within four months of the general contractor's bankruptcy. The question on appeal concerns the recognition federal bankruptcy law should give to state-created property rights under the Michigan Builders Trust Fund Act.

The Michigan act creates a security device in the form of a "trust fund" for the benefit of the owner and subcontractors on construction projects:

In the building construction industry, the building contract fund paid by any

person to a contractor . . . shall be considered by this act to be a *trust fund,* for the benefit of [(1)] the person making the payment, [and (2)], contractors, laborers, subcontractors or materialmen, and the contractor . . . shall be considered the *trustee* of all funds so paid to him for building construction purposes. Mich.Comp.Laws Ann. § 570.151 (1967) [Emphasis added.] The purpose of the statute is to protect the owner and those whose labor and materials make the performance of a construction contract possible and give rise to the owner's obligation to pay.

The trustee in bankruptcy seeks to set aside payments to the subcontractors as preferential transfers under § 60 of the Bankruptcy Act. He wants to bring the funds into the bankrupt's estate to pay the general creditors. The subcontractors claim that the money paid to them constitutes the corpus of a trust which escapes the hands of the trustee. The district court ruled in favor of the subcontractors. 405 F.Supp. 164 (E.D.Mich.1975). We affirm on grounds that a Michigan building contractor does not have sufficient beneficial interest in funds impressed with the statutory trust to constitute his "property" under the Bankruptcy Act. Therefore, the contractor's trustee in bankruptcy has no right to appropriate for the benefit of general creditors funds transferred to subcontractors by the contractor or the owner within four months of bankruptcy.

## I.

On May 24, 1971, Frimberger Corporation filed in the federal court for the eastern district of Michigan a voluntary petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C. §§ 722–23 (1976). A year earlier in the spring of 1970, Frimberger and Ford Motor Company had agreed in Michigan that Frimberger would build and install conveyors at a Ford plant in New Jersey. During the course of construction in the summer and fall of 1970,

Frimberger employed the sixteen subcontractors who are defendants in this action. When the work was finished in the fall, Ford owed Frimberger approximately $355,000. Frimberger, in turn, owed most of this money to its sixteen subcontractors.

Instead of waiting to be paid by Ford before paying the subcontractors, Frimberger decided to authorize Ford to pay the subcontractors directly and to deduct this amount from Ford's indebtedness. Frimberger executed a series of written authorizations on December 8 and 15, 1970, and January 14 and 27, 1971, permitting Ford to pay all sixteen subcontractors directly. By February 11, 1971, Ford had issued checks to fourteen of the sixteen subcontractors. Frimberger itself paid the other two. Ford then paid Frimberger the remaining balance due on the construction contract. All sixteen of the checks to the subcontractors, both the fourteen drawn by Ford and the two by Frimberger were issued within four months of the filing of the petition in bankruptcy by Frimberger.

The trustee in bankruptcy filed this action against Ford and the sixteen subcontractors, seeking to recover the funds as preferential transfers within four months of bankruptcy under § 60a of the Bankruptcy Act, 11 U.S.C. § 96(a) (1976). The Trustee further claimed that Ford is liable for conversion of the bankrupt's property. Ford and the subcontractors denied liability for numerous reasons, including the claim that the payments could not be set aside even if preferential because the subcontractors held title to funds as trust beneficiaries under the Michigan Builders Trust Fund Act. The district court granted defendants' motions for summary judgment. The trustee in bankruptcy appeals.

## II.

Neither the current Bankruptcy Act nor its legislative history addresses the question of how statutory trust funds held by a debtor for the benefit of others are to be

treated for purposes of the Act's "property," [1] "preference," [2] "priority," [3] "statutory lien," [4] or "discharge," [5] provisions. To unravel this question, we will look to the language and purpose of the Bankruptcy Act in relationship to property rights created under state law, the purpose of the Michigan statutory trust, the practices of the construction industry and the problems of the industry which the statutory trust was designed to remedy. We will also look to the new Bankruptcy Act and its legislative history to see if its treatment of statutory trusts should be used as persuasive authority.

## III.

Conceptually, the Michigan builders trust fund statute can be viewed in any one of three ways: (1) as imposing a traditional trust on the contractor's funds for the benefit of subcontractors, laborers and materialmen; or (2) as creating a security arrangement in the nature of a statutory lien; or (3) as creating no security or other interest recognizable under the Bankruptcy Act.

█ Viewed as a traditional trust, the beneficial interests in the trust fund would not be the "property" of the bankrupt contractor or his estate in bankruptcy. The subcontractors would own the beneficial title to the trust, and the contractor would simply hold legal title to the funds as trustee. Although the Bankruptcy Act does not deal expressly with trusts, the Supreme Court in an early case under the Bankruptcy Act of 1867 established that funds held in trust by a bankrupt debtor are immune from the claims of general creditors so long as the funds can be traced. *Hawkins v. Blake*, 108 U.S. 422, 435–36, 2 S.Ct. 804, 27 L.Ed. 775 (1882). This rule has not been changed by the current Bankruptcy Act, and the courts have continued to apply it. *See Pearlman v. Reliance Insurance Co.*, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962); *First National Bank v. Staake*, 202 U.S. 141, 26 S.Ct. 580, 50 L.Ed. 967 (1905).

█ A statutory lien, on the other hand, is not effective against the claims of the trustee in bankruptcy unless it is perfected prior to the filing of the petition in bankruptcy. The lien is not perfected if, under state law, a bona fide purchaser would receive title superior to the lienholder upon transfer of the assets subject to the lien. A lien must be perfected by timely filing and adequate notice, and the time of perfection is defined by state statutory and case law. Statutory trusts, however, arise automatically. No notice or filing is required, and perfection is beside the point. Under trust fund theory, a subcontractor's beneficial interest arises when the owner pays the building contract fund, even though a subcontractor cannot bring suit until the general contractor fails to pay a "matured" debt. *B. F. Farnell Co. v. Monahan*, 377 Mich. 552, 141 N.W.2d 58 (1966).

1. Section 70 provides that the trustee in bankruptcy shall be "vested by operation of law with . . . title" to the "property" of the bankrupt. 11 U.S.C. § 110.

2. Under § 60 the trustee in bankruptcy may set aside as a preference "a transfer . . . of any of *the property of a debtor* . . . for . . . an antecedent debt, made . . . while insolvent and within four months" of bankruptcy, the effect of which will enable the "creditor to obtain a greater percentage of his debt than some other creditor of the same class." 11 U.S.C. § 96(a)(1) [Emphasis added.]

3. Section 64 establishes the priority of distribution of the assets of the bankruptcy estate to creditors. For example, the costs of adminis-tration are given first priority. Taxes are second; certain wages owed to employees are third. 11 U.S.C. § 104.

4. Under § 67c(1), "statutory liens" (including mechanics liens) on a debtor's property are "invalid" against the trustee in bankruptcy unless "perfected" on the date of bankruptcy so that a bona fide purchaser of the assets subject to the lien could not acquire good title under state law. 11 U.S.C. § 107(c)(1).

5. Section 17 provides that a "discharge in bankruptcy shall release a bankrupt from all his provable debts, . . . except such as . . . (4) were created by his . . . misappropriation or defalcation while acting . . . in any fiduciary capacity." 11 U.S.C. § 35.

Although there is authority to the contrary with respect to statutory tax trusts,[6] the few cases on the question characterize other statutory trusts as traditional trusts for purposes of bankruptcy.[7] Commentators have criticized this result, however. They say that statutory trusts should be treated as statutory liens because statutory trusts function as a security device, and "the application of a national bankruptcy statute to legal interests diversely defined" by the states requires classification "on the basis of function rather than nomenclature."[8] But no cases have adopted this approach, and this criticism overlooks the traditional role of the states in creating and defining the underlying property interests and commercial arrangements to which the Bankruptcy Act applies.[9]

Though *Aquilino v. United States*, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960), is not a bankruptcy case, the Court's reasoning is on point. Subcontractors under New York's builders trust fund statute claimed money paid by the owner to a general contractor. The United States also claimed the funds under a perfected federal tax lien. The New York Court of Appeals ruled in favor of the government, apparently on the ground that federal tax liens take "precedence" over statutory trusts as a matter of federal tax law.

The Supreme Court reversed and remanded. It held that the question of priority depends upon the "rights created under state law" by the statutory trust. Chief Justice Warren rejected the government's argument that "the definition of the taxpayer's property interests should be governed by federal law" because that argument "ignores the long-established role that the States have played in creating property interests and places upon the courts the task of attempting to ascertain a taxpayer's property rights under an undefined rule of federal law." 363 U.S. at 513 n.3, 80 S.Ct. at 1280. With these instructions from the Supreme Court, the New York Court of Appeals, on remand, in an opinion by Chief Justice Fuld, reversed its previous position. It found that under state law,

> there is no good reason to suppose that the Legislature, by declaring payments to a contractor to be "trust funds," did not intend thereby to avoid the very same possibilities of harm to the statutory beneficiary as was intended by the rule against diversion of funds of an express trust. . . . Our conclusion, then, is that . . . a contractor does not have sufficient beneficial interest in the moneys, due or to become due from the owner under the contractor, to give him a property right in them, except insofar as there is a balance remaining after all

**6.** *United States v. Randall*, 401 U.S. 513, 91 S.Ct. 991, 28 L.Ed.2d 273 (1971) and *England v. United States*, 546 F.2d 821 (9th Cir. 1976), *cert. denied*, 431 U.S. 974, 97 S.Ct. 2939, 53 L.Ed.2d 1071 (1977), appear to hold that tax trusts established by statute in favor of federal or state taxing authorities are subject to § 64 of the Bankruptcy Act, the priority section. This section gives tax creditors second priority after the payment of costs of administration of the bankrupt's estate. These cases hold that any attempt to give tax creditors trust beneficiary status conflicts with the priority scheme of § 64. In the instant case, however, there is no legislative indication that building construction funds held in trust under state law should be considered a general asset of a bankrupt's estate. These cases have apparently been modified or overruled by the new Bankruptcy Act. *See* note 18 *infra*.

**7.** *Carrier Corp. v. J. E. Schecter Corp.*, 347 F.2d 153 (2d Cir. 1965) (*semble*); *Wickes Boiler Co., Inc. v. Godfrey-Keeler Co., Inc.*, 116 F.2d 842

(2d Cir. 1940), *mod. on reh.* 121 F.2d 415, *cert. denied* 314 U.S. 686, 62 S.Ct. 297, 86 L.Ed. 549 (1941); *Elliott v. Bumb*, 356 F.2d 749 (9th Cir. 1966).

**8.** Note, *The Statutory Trust Fund in Bankruptcy*, 50 Yale L.J. 1268, 1271 (1941). *See also* 4 Collier, Bankruptcy ¶ 67.25[2] (14th ed. 1974) ("statutory trust is no more than a legislative device to protect a particular class of creditors" and should be treated as a statutory lien under § 67).

**9.** *Chicago Board of Trade v. Johnson*, 264 U.S. 1, 10, 44 S.Ct. 232, 239, 68 L.Ed. 533 (1923) ("where the bankruptcy law deals with property rights which are regulated by the state law, the federal courts in bankruptcy will follow the state courts"); *Eaton v. Boston Trust Co.*, 240 U.S. 427, 429, 36 S.Ct. 391, 392, 60 L.Ed. 723 (1916) ("the policy of the Bankruptcy Act is to respect state exemptions").

subcontractors and other statutory beneficiaries have been paid. This being so, it follows that the tax lien herein asserted by the Government . . . is ineffective to reach such moneys . . . .

10 N.Y.2d 271, 279, 219 N.Y.S.2d 254, 260, 262–263, 176 N.E.2d 826, 831–32 (1961).

█ We believe that this reasoning applies to the treatment of statutory builders trusts under the Bankruptcy Act. Under Michigan law, the Builders Trust Fund Act creates a private, civil action in favor of the beneficiaries of the statutory trust, *National Bank of Detroit v. Eames & Brown*, 396 Mich. 611, 242 N.W.2d 412 (1976). Michigan courts have also determined that, to the extent state law controls the federal question, the beneficial interests of subcontractors and materialmen under the statutory trust are not the "property" of the bankrupt debtor or his trustee in bankruptcy under § 70 of the Bankruptcy Act. *B. F. Farnell Co. v. Monahan*, 377 Mich. 552, 141 N.W.2d 58 (1966). We agree with the Michigan courts and believe that federal bankruptcy law should recognize and enforce the property rights created by state law under the Michigan statutory trust.

## IV.

█ There are additional reasons to resolve the federal question under the Bankruptcy Act in favor of recognition of these state-created property rights. The Michigan Builders Trust Fund Act was passed prior to the restrictions placed on statutory liens under the 1938 revision of the Bankruptcy Act. It was framed for legitimate reasons of state law and not to undermine the Bankruptcy Act. We do not believe that the statutory trust should be construed in substance as creating a statutory lien or as an evasion of the property and preferential transfer provisions of §§ 70 and 60 of the Bankruptcy Act.

The Michigan Builders Trust Fund Act is designed to remedy problems in the construction industry. Like the law merchant of an earlier day, the building trades have gradually created a set of commercial expectations as the result of the customs and practices of the industry. The nature of the industry is such that the commercial expectations of the parties are defeated when a building contractor or subcontractor does not use accounts paid to him on a job to pay subcontractors or materialmen. Unless the parties see that construction funds are properly applied down the line, the liabilities of the parties up the line are affected. The unpaid workers must undertake the lengthy and wasteful process of filing, perfecting and foreclosing on their mechanics liens. The owner's property and the construction lender's security are encumbered.[10]

The statutory builders trust is not simply special legislation that the building trades have lobbied through state legislatures. Its justification is that the contractor, subcontractor and materialmen cannot spread their risks in the same way as the grocer or other merchants with many customers. Large quantities of labor and materials may go into a single construction project over a long period of time. A large part of a tradesman's capital may be tied up in a small number of construction projects. There is a substantial risk that a general contractor who goes bankrupt will pull down with him some of his subcontractors and materialmen, as well as cause serious economic loss to the owner.[11]

The construction lender, owner, disbursing agent, contractor, subcontractor or surety company which furnishes a payment

---

10. For further discussion of the Michigan Act as "one of a genre of Depression-era measures intended to afford relief . . . in the construction industry," *see General Ins. Co. v. Lamar Corp.*, 482 F.2d 856, 860 (6th Cir. 1973); *National Bank of Detroit v. Eames & Brown*, 396 Mich. 611, 242 N.W.2d 412, 415–16 (1976).

11. *See* the *General Insurance* and *National Bank of Detroit* cases, *supra* note 10; N. Penney & R. Broude, Land Financing 658 (1970).

bond may not have a direct contractual relationship with a materialman down the line. But courts and legislatures have increasingly found that the parties have an independent legal duty arising from reasonable commercial expectations to see to the proper application of construction funds.[12] In the absence of statute, courts have declared that construction funds in the hands of a contractor are held subject to a constructive trust or an equitable assignment or an equitable lien.[13] Even in the absence of a state builders trust statute, federal bankruptcy courts in a variety of situations have refused to apply the property, preference and statutory liens sections of the Bankruptcy Act to favor unsecured creditors over the equitable claims of subcontractors and materialmen to the proceeds of a construction project in the hands of a bankrupt contractor.[14]

State builders trust statutes simply recognize in statutory form the principles embodied in these court decisions. The remedies provided by mechanic's lien laws are unsatisfactory,[15] and state legislatures in a number of states, like Michigan, have adopted builders trust fund statutes. The property rights created by these state statutes should be recognized and enforced in the bankruptcy system. The trustee in bankruptcy should not be permitted to appropriate the trust of another and distribute it to the bankrupt's creditors.

## V.

We draw support for our position from the new Bankruptcy Act, as well. The new Act, signed by the President on November 6, 1978,[16] expressly recognizes trust interests created under state law. Section 541, the "property" section of the new law, provides that the bankruptcy estate shall include "all legal and equitable interests of the debtor in property." But it limits the interests of the trustee in bankruptcy to the debtor's interest in the trust. According to § 541(c)(2), "a restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case" in bankruptcy.

In addition, the Senate Report on the new Bankruptcy Act and the statements of the floor managers of the Act in both the House and the Senate demonstrate that the Bankruptcy Act "will not affect various statutory provisions . . . that create a trust fund for the benefit of a creditor of the debtor."[17] The Senate Report and the floor managers cite several examples of statutory trust funds. They cite statutes impressing a trust on withholding and other taxes in the hands of the employer or person who collects the tax for state or federal governments.[18] They also cite the federal

---

**12.** *See, e. g.*, Michigan's payment bonding statute, Mich.Comp.Laws Ann. § 129.207 (1967); The Miller Act, 40 U.S.C. § 270a–f (1976); *Jackson v. Flohr*, 227 F.2d 607 (9th Cir. 1955), *cert. denied* 350 U.S. 947, 77 S.Ct. 322, 100 L.Ed. 826 (1956). *See generally* Annot. 26 A.L.R.Fed. 746 (1976); Annot. 62 A.L.R.3d 288 (1975).

**13.** *Johnson v. Root Mfg. Co.*, 241 U.S. 160, 36 S.Ct. 520, 60 L.Ed. 934 (1914); *Mickelson v. Aetna Casualty & Surety Co.*, 452 F.2d 1219 (8th Cir. 1971); *Carrier Corp. v. J. E. Schecter Corp.*, *supra* note 7; *American Service Co. v. Henderson*, 120 F.2d 525 (4th Cir. 1941).

**14.** *Keenan Pipe & Supply Co. v. Shields*, 241 F.2d 486 (9th Cir. 1956); *Mullins v. Noland Co.*, 406 F.Supp. 206 (N.D.Ga.1975); *Stone v. Mondie*, 157 F.Supp. 929 (W.D.Okl.1957).

**15.** *See* General Insurance and National Bank of Detroit *supra* note 10.

**16.** P.L. 95–598, 95th Cong., 2d Sess., set out in the "Statute" section of the Nov. 14, 1978 edition of *Law Week*, 47 U.S.L.W. 1.

**17.** S.Rep. 989 at 82, 95th Cong., 2d Sess. (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787 at 5868; 124 Cong.Rec. S17.413 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini); 129 Cong.Rec. H11,096 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards).

**18.** According to this legislative history, it appears that § 541 of the new Act intends to modify or overrule the holdings in the *Randall* and *England* cases, *supra* note 6. 124 Cong. Rec. S17,436 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini); 124 Cong.Rec. H11,114 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards).

statutory trust created in favor of farmers who sell livestock to meat packers under the Packers and Stockyards Act § 206, 7 U.S.C. § 196 (1976). The legislative purpose is clear. Statutory trust funds are not the property of the debtor and are not subject to the statutory lien (§ 545) and prefence (§ 547) provisions of the new Act.

In view of the fact that the current Bankruptcy Act is silent on the subject of statutory trusts, we believe that it is proper to use the new Act as persuasive authority in interpreting the old. Under both Acts, a state statute creating a builders trust fund should be given effect in bankruptcy. The beneficial interests of subcontractors and materialmen in a building fund should not be regarded as the property of the bankrupt debtor, at least so long as the beneficial interests are traceable. In the instant case tracing creates no problem. The funds subject to the statutory trust were paid to the subcontractor as trust beneficiaries prior to bankruptcy.[19]

Accordingly, the judgment of the District Court is affirmed. Costs of appeal are taxed against Appellant.

---

[19] There is no claim in this case that Ford and Frimberger preferred or unfairly advanced trust funds to some subcontractors on the job at the expense of others. The trustee seeks to recover funds from the subcontractors for distribution to the unsecured creditors, not for distribution to unpaid beneficiaries of the statutory trust. We need not decide in this case what power the trustee has to recover payments made to favored subcontractors when the building trust funds have been exhausted and some subcontractors have been left unpaid.