## In re CASCO ELECTRIC CORPORATION, Debtor.

**Raymond AAB, as Trustee of the Estate of Casco Electric Corporation and Casco Electric Corporation, Plaintiffs,**

v.

**WESCO CORPORATION, Defendant.**

**Bankruptcy No. 180–05638–21.**
**Adv. No. 182–0196–21.**

United States Bankruptcy Court,
E.D. New York.

March 3, 1983.

**192**

Raymond J. Aab, New York City, trustee-plaintiff.

Siegel, Sommers & Schwartz, New York City, for defendant Wesco Corp.; Harris Schwartz, New York City, of counsel.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

The issue in this adversary proceeding is whether the trustee of an insolvent contractor may recover as a preference monies paid a subcontractor, the beneficiary of a statutory trust, under the Lien Law of New York State.

The basic facts are not in dispute.

Casco Electric Corporation ("Casco") filed a petition under Chapter 7 of the Bankruptcy Code on September 22, 1980. Casco was an electrical contractor doing business in Bethpage, New York.

At the time it filed, it was working on twelve projects and buying materials from the defendant, Westinghouse Electric Corporation ("Wesco"), for three of those jobs.

Casco did not keep the money it received in payment for its various jobs separate. As Casco received payment on work it was doing, it put the monies into its general account, out of which it paid its bills, paying the oldest bills first. Casco maintained only two checking accounts: one for general disbursements, and one for payroll purposes. It deposited monies from whatever source in the same general account into which it has deposited payments from contractors, including the proceeds of a bank loan made June 25, 1980.

On June 23, 1980, Casco paid Wesco by check $1,558.97; on July 11, 1980, $2,180.25; and on July 31, 1980, $2,664.30 (PXs–1–3). Wesco is still owed over $25,000.

Casco is owed less money than it owes; almost all its assets represent monies due it on unfinished projects.

Casco's trustee in bankruptcy has brought this adversary proceeding, pursuant to § 547(b) of the Bankruptcy Code, to recover the amount paid Wesco within ninety days of the filing of Casco's petition as preferential payments.

Wesco's defense, in essence, is that the trustee has failed to carry his burden of proving that the money paid Wesco was the property of the debtor.

## DISCUSSION

When a contractor, like Casco, is unable to pay its debts, two conflicting public policies have to be reconciled. The public policy underlying the Federal bankruptcy law which is to secure equality of distribution among creditors, and the public policy reflected in New York's Lien Law which is to afford adequate protection to those who contribute services on materials upon an improvement of real property. Discussing New York's Lien law, Chief Judge Charles E. Clark, dissenting in *Gramatan-Sullivan, Inc. v. Koslow*, 240 F.2d 523, 527 (2d Cir. 1957), said:

> "We have before us for construction important New York remedial legislation for the protection of laborers and materialmen on building jobs. The evil aimed at is that of 'pyramiding,' whereby a contractor parlays his speculations, using one undertaking as the basis of credit expansion for another, with lenders and security holders pretty well protected until, on ultimate disaster, those contributing labor or materials to a particular job are left holding an empty bag."

The relevant section of the Bankruptcy Code, § 547, reads:

"(b) * * * the trustee may avoid any transfer of property of the debtor—

"(1) to or for the benefit of a creditor;

"(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

"(3) made while the debtor was insolvent;

"(4) made—

"(A) on or within 90 days before the date of the filing of the petition * * *

"(5) that enables such creditor to receive more than such creditor would receive if—

"(A) the case were a case under chapter 7 of this title;

"(B) the transfer had not been made; and

"(C) such creditor received payment of such debt to the extent provided by the provisions of this title. * * *

"(e)(3) For purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred.

"(f) For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition."

To constitute a preference, the transfer must ·be "property of the debtor." 11 U.S.C. § 547(b). Wesco maintains that the trustee has failed to establish that the monies it received within the preference period constituted property of the debtor, rather than asséts of a statutory trust of which Wesco was one of the beneficiaries.

By its terms, New York's Lien Law creates a trust. It requires that funds received by a general contractor for the improvement of real property be held in trust for the benefit of his subcontractors and suppliers. New York Lien Law §§ 70–79a. Section 70 of the Lien Law provides in ¶ 1:

"The funds described in this section * * received by a contractor under or in connection with a contract for an improvement of real property * * * shall constitute assets of a trust * * *."

Section 71(2) provides that:

"The trust assets of which a contractor * * * is trustee shall be held and applied for the following expenditures arising out of the improvement of real property * * and incurred in the performance of his contract * * * : (a) payment of claims of subcontractors * * * and materialmen."

Failure to comply with the statute constitutes a diversion of trust funds, which is punishable as larceny. New York Lien Law § 79–a.

Intermingling of the trust funds is permitted, but careful records must be kept. New York Lien Law § 75(2).

Although the issue raised by the present proceeding must be a recurrent one, i.e., whether a subcontractor who is protected by the Lien Law, and who receives payment during the preference period, can be forced to return the funds to the contractor's trustee in bankruptcy, there are few decisions in point.

In *Selby v. Ford Motor Co.,* 590 F.2d 642 (6th Cir.1979), the Sixth Circuit had before it the question of what recognition Federal bankruptcy law should give to state-created rights under a Michigan statute very similar to New York's Lien Law. In that case, the Ford Motor Company for which the Chapter XI debtor had done construction work paid sixteen certain subcontractors directly; two other subcontractors were paid by the debtor who subsequently received the balance due from Ford under the contract. The trustee in bankruptcy of the debtor-contractor sought to recover all these funds as preferential under § 60a of the Bankruptcy Act (former 11 U.S.C. § 96(a) (1976)). The Sixth Circuit agreed with the District Court that the money belonged to the subcontractors:

"We affirm on grounds that a Michigan building contractor does not have sufficient beneficial interest in funds impressed with the statutory trust to constitute his 'property' under the Bankruptcy Act. Therefore, the contractor's trustee in bankruptcy has no right to appropriate for the benefit of general creditors funds transferred to subcontractors by the con-

tractor or the owner within four months of bankruptcy." 590 F.2d at 644.

The Sixth Circuit viewed the Michigan statute as imposing a traditional trust on the contractor's funds for the benefit of subcontractors, laborers, and materialmen. It found support for this view in two Second Circuit cases, and a third by the Ninth Circuit which it described as "characteriz[ing] other statutory trusts as traditional trusts for purposes of bankruptcy." 590 F.2d at 646. The Second Circuit cases are *Carrier Corp. v. J.E. Schecter Corp.,* 347 F.2d 153 (2d Cir.1965), and *Wickes Boiler Co., Inc. v. Godfrey-Keeler Co., Inc.,* 116 F.2d 842 (2d Cir.1940), *mod. on reh.* 121 F.2d 415, *cert. denied* 314 U.S. 686, 62 S.Ct. 297, 86 L.Ed. 549 (1941). The Sixth Circuit acknowledged that *Collier on Bankruptcy* had been critical of these authorities, contending that statutory trusts should be treated as statutory liens, but, as the court noted:

"[N]o cases have adopted this approach, and this criticism overlooks the traditional role of the states in creating and defining the underlying property interests and commercial arrangements to which the Bankruptcy Act applies." (Footnote omitted) 590 F.2d at 646.

Adopting the reasoning of the New York Court of Appeals in *Aquilino v. United States,* 10 N.Y.2d 271, 219 N.Y.S.2d 254, 176 N.E.2d 826 (1961), in construing New York's Lien Law, the Sixth Circuit concluded that "the beneficial interests of subcontractors and materialmen under the statutory trust are not the 'property' of the bankrupt debtor or his trustee in bankruptcy under § 70 of the Bankruptcy Act." 590 F.2d at 647.

The Court found authority for its conclusion in the legal duty, independent of statute, "arising from reasonable commercial expectations to see to the proper application of construction funds." *Id.,* at 648. It also found support in the language and legislative history of the Bankruptcy Code, in particular, § 541. That section defines what constitutes the "property of the estate," and is explained in the authoritative Senate Report and by the floor managers in both houses as designed not to "affect various statutory provisions * * * that creates a trust fund for the benefit of a creditor of the debtor." S.Rep. No. 95–989 at 82, 95th Cong., 2d Sess. (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5868. The Sixth Circuit relied not only on that report, but also on the following legislative materials: 124 Cong.Rec. S 17,413 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini); 124 Cong.Rec. H 11,096 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards).

The Court concluded with respect to the Code:

"The legislative purpose is clear. Statutory trust funds are not the property of the debtor and are not subject to the statutory lien (§ 545) and prefence [*sic*] (§ 547) provisions of the new Act." 590 F.2d at 649.

Like the beneficiary of any kind of trust, materialmen and subcontractors must be able to trace the funds held in trust, a requirement which the Sixth Circuit held presented no problem in the case before it because "[t]he funds subject to the statutory trust were paid to the subcontractor [*sic*] as trust beneficiaries prior to bankruptcy." *Ibid.* Indeed, fourteen of the sixteen payments challenged there never even came into the hands of the debtor, but were paid the subcontractors directly by Ford. It may have been equally clear that the other two payments were likewise out of Ford money. Here, the facts are more obscure. Nevertheless, *Selby,* the authorities relied on in *Selby,* and cognate cases require the same result as was reached there.

Very pertinent is *Aquilino v. United States, supra,* construing the predecessor to New York's present lien law. The United States claimed in that case that a Federal tax lien against a general contractor was superior to the rights of his subcontractors. The New York Court of Appeals, on remand from the Supreme Court, held that the lien was not because:

"as a matter of New York law, a contractor does not have a sufficient beneficial interest in the monies, due or to become due from the owner under the contract, to give him a property right in them,

except insofar as there is a balance remaining after all subcontractors and other statutory beneficiaries have been paid." *Aquilino v. United States,* 10 N.Y.2d 271, 262–63, 219 N.Y.S.2d 254, 176 N.E.2d 826 (1961).

In *Wickes Boiler Co. v. Godfrey-Keeler Co.,* 116 F.2d 842 (2d Cir.1940), *mod. on reh.* 121 F.2d 415, *cert. denied* 314 U.S. 686, 62 S.Ct. 297, 86 L.Ed. 549 (1941), the Second Circuit held that New York's Lien Law gave a subcontractor the right to have monies due an insolvent debtor contractor from an owner impressed with a trust in its favor. In *Carrier Corp. v. J.E. Schecter Corp.,* 347 F.2d 153 (2d Cir.1965), involving New Jersey law, the court reached a similar result, impressing a trust in favor of four subcontractors on funds due the debtor as a result of a construction contract on which they had worked.

In *Albert Pick Co., Inc. v. Travis,* 6 F.Supp. 486 (E.D.N.Y.1933), in which the issue was whether certain monies paid on a particular job and recovered by the trustee in bankruptcy as a preference from the creditor to whom it had been paid should "be impressed with a trust fund for the benefit of the creditors who furnished materials and performed work on the Hunter College job, or whether it should be equally distributed among all creditors." 6 F.Supp. at 487. District Judge Moscowitz held that the money belonged to the materialmen:

"To follow the trustee's contention that the funds should be distributed among all the creditors would nullify the very purpose of the statute, which was to distribute the specific fund to a preferred class of creditors. There would be no purpose for the Lien Law were it not that the state intended to protect the very class that the statute outlined. If the contractor attempts to deprive the lienors of their rights, the court should restrain and not help facilitate the avoidance of lawful obligations." 6 F.Supp. at 487–88.

Pertinent also is *In re Heintzelman Construction Co., Inc.,* 34 F.Supp. 109 (W.D.N.Y.1940). In that case, during a reorganization which preceded an adjudication in bankruptcy, certain funds which came from the improvement of real property were generated. The trustee maintained that these funds should be used to pay for the material and labor used in the improvement; the Collector of Internal Revenue sought to reach them for Social Security taxes. The Court said the funds from the improvement "were a trust fund, and never were a part of the estate. * * * Property impressed with a trust continues so impressed in the hands of a trustee. Whatever title he took was subject to valid claims and equities which might have been asserted against the bankrupt." 34 F.Supp. at 111. The Court refused to deem controlling that the trustee had not kept up separate accounts, but had mingled all the funds in a single account, saying:

"[E]ach claimant has a lien on the moneys now in the hands of the trustee to the extent of the moneys received by the trustee on account of the materials and labor furnished by him." 34 F.Supp. at 112.

What these cases make clear is that as between the trustee, as the representative of Casco's general creditors, and Wesco, a subcontractor on Casco's construction projects, the latter would have the superior right to the monies paid during the preference period if part of the funds paid Casco were from the three projects on which Wesco's equipment was used. Because of the way in which Casco maintained its records and paid its creditors, it cannot now be determined what money from those projects Casco had on hand when it paid Wesco. But, as Wesco points out, the burden lies on the trustee to establish every element of a preference, including the fact that the money given it constituted property of the debtor. If the money represented assets of the statutory trust created by New York's Lien Law in Wesco's favor, its receipt by Wesco was not a preference. Since it is undeniable that Casco received monies constituting trust assets, the burden lay on the trustee to prove that the money paid Wesco was not part of such trust assets. Indeed, it is arguable that by the very act of payment, Casco identified the funds as trust assets.

To require Wesco to return the money to Casco's trustee for distribution among Casco's general creditors would defeat the purposes of New York's Lien Law, as District Judge Moscowitz pointed out in *Albert Pick Co., Inc., supra,* even recognizing that many of Casco's creditors will probably include unpaid beneficiaries of New York's Lien Law. The result most congruent with the legislative intention in enacting the Bankruptcy Code, which was to respect statutory trusts, like that created by New York's Lien Law, and to defer to the public policy behind such laws, is not to apply the preference section of the Code to payments made subcontractors within the preference period, unless demonstrated *not* to be paid out of monies received from the improvements to which the subcontractors contributed.

For the foregoing reasons, this Court holds that the trustee has failed to establish that the money paid Wesco constituted a preference.

The foregoing constitutes the Court's findings of fact and conclusions of law in this proceeding.

Submit judgment.