### In re DUNWELL HEATING & AIR CONDITIONING CONTRACTORS CORP., Debtor.

**Bankruptcy No. 084–40345–21.**

United States Bankruptcy Court, E.D. New York.

Oct. 8, 1987.

Gutman & Gutman by Elizabeth A. Gutman, Mineola, N.Y., for trustee.

Wrenn & Schmid by Malcolm B. Choset, East Islip, N.Y., for Norstar Bank of Long Island.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

A motion is before the Court on an application by Norstar Bank of Long Island ("the Bank"), successor by merger to Bank of Long Island (formerly the First National Bank of East Islip), for an order directing Elizabeth A. Gutman, the Chapter 7 Trustee, to pay the Bank's $8806.15 secured claim to accounts receivable, plus interest, as an administrative expense and priority claim.

The Bank is a banking corporation maintaining offices in East Islip, Long Island. On June 21, 1979, the Bank loaned Dunwell Heating & Air Conditioning Contractors Corp. ("debtor") $85,000. The debt was evidenced by a note requiring repayment over five years at an interest rate of 12 percent per year. The note was secured by a security agreement dated June 21, 1979, executed and delivered by the debtor to the Bank. The security agreement provided the Bank with a security interest in all of the debtor's machinery, equipment, furniture, fixtures, inventory and accounts receivable, then and thereafter acquired. The Bank perfected its security interest by filing a financing statement with Suffolk County on June 25, 1979 and one with New York State on June 26, 1979. Timely continuation statements were filed on May 31, 1984 and June 4, 1984. The debtor subsequently defaulted in its repayment of the loan.

The debtor is a corporation having performed heating and air conditioning construction contracts as a contractor or subcontractor for real property owners or contractors. It engaged subcontractors, materialmen and suppliers ("subcontractors") during the course of its performance. The subcontractors discharged their obligations to the debtor prior to receiving payment. They were to be paid upon the debtor's receipt of proceeds earned from the primary construction contract. Unfortunately, a number of these subcontractors remain unpaid. The trustee does not contest that these obligations arose subsequent to the Bank's perfection of its security interest in the debtor's property.

The debtor filed a voluntary petition pursuant to Chapter 7 on August 24, 1984. An interim trustee was appointed on Au-

gust 29, 1984. Approximately three months later, the trustee initiated three adversary proceedings to recover accounts receivable owed the debtor. Two of these proceedings are still pending. The trustee has refused to pay the Bank the value of its secured claim during this period. As of the trustee's second interim report, filed February 17, 1987, the estate possessed net assets of $41,784.50, an amount insufficient to satisfy all claims.

On June 12, 1987, the Bank moved for an order directing the trustee to pay its secured claim of $8,806.15 plus interest as an administrative expense and priority claim for post-petition use and possession. The Court reserved decision on June 25, 1987.

The Bank's affidavit in support of its motion is a bare recitation of facts and request for relief. It is wholly unsupported by a discussion of the relevant legal issues or by citations to legal authority. The Bank nonetheless appears to be contending that its perfected secured claim is an administrative expense because the funds owed it were retained post-petition in the possession of the debtor or trustee. The Bank also appears to be contending that it is entitled to priority in payment by the trustee based upon its status as the first secured party.

The trustee contends that the Bank's claim to administrative expense treatment is without foundation in law or fact. The trustee further contends that the Bank's perfected security interest in accounts receivable is subordinate to the rights of the debtor's unpaid subcontractors as trust beneficiaries of those same accounts receivable pursuant to Article 3–A of the N.Y. Lien Law. Consequently, any distribution of assets prior to final adjudication or settlement of the pending adversary proceeding would be premature.

## DISCUSSION

The key question is whether the holder of a perfected security interest in accounts receivable is entitled to priority over unpaid subcontractors of the debtor who are putative trust beneficiaries of those accounts receivable under state law. The Court will first decide whether a Lien Law trust exists in this case. If it does exist, the Court will then decide whether such trust survives the filing of a bankruptcy petition. Finally, the Court will decide the priority of trust beneficiaries relative to the holder of a perfected security interest in the same property.

Article 3–A of the N.Y.Lien Law provides that funds received by an owner or contractor in connection with a contract for the improvement of real property or for a public improvement constitute assets of a trust. N.Y.Lien Law § 70(1) (McKinney 1987). The purpose of the trust is, *inter alia*, the payment of claims to subcontractors, laborers and materialmen arising out of the improvement to real property and incurred during the performance of the contract or subcontract. *Id.* § 71(2). These funds constitute separate trusts for each such contract. The contractor is deemed the trustee. *Id.* § 70(2). Each trust commences at the time that the asset comes into existence, whether or not a beneficiary exists at that time. *Id.* § 70(3). It continues its existence until every trust claim arising at any time prior to completion of the contract or subcontract has been paid, discharged or applied for the purpose of the trust. *Id.* Any transfer of trust assets prior to payment or discharge of all trust claims is deemed a diversion of trust assets whether or not trust claims are in existence at the time of the transfer. *Id.* § 72(1). Furthermore, transfer may render the trustee guilty of larceny. *Id.* § 79–a. The filing of a notice of lending is an affirmative defense to an action to recover assets diverted from the trust. *Id.* § 73(1), (2). Finally, persons having claims for which the trustee is authorized to use trust assets are deemed beneficiaries whether or not they have filed a notice of lien. *Id.* § 71(4).

The first issue is whether N.Y.Lien Law Article 3–A applies to the facts in this case. The Court believes it does apply. The debtor was in the business of constructing heating and air conditioning systems. In so doing, it employed subcontractors, materialmen and suppliers of the type

described by the Lien Law. *See, Id.* § 70(1). The fact that the record does not reflect the existence of any defined beneficiaries does not invalidate the putative trust. *See, Id.* § 70(3). Moreover, the debtor's business involved the improvement of real property. Under the statute, "real property" is defined as including real estate and fixtures. N.Y.Lien Law § 2(2) (McKinney 1987). "Improvement" is defined as including the "erection, alteration or repair of any structure upon, connected with, or beneath the surface of real property and any work done upon such property on materials furnished for its permanent improvement ..." *Id.* § 2(4). The words "permanent improvement" are intended to differentiate labor and materials which are consumed from those which enter into and become part of the plant of the contractor owned and used by him in his work. *Gates v. Jno. F. Stevens Co.,* 220 N.Y. 38, 115 N.E. 22 (1917). Where appliances including *air conditioners* were installed in an apartment complex and intended to be permanent by the owner, they qualified as permanent improvements to real property within the meaning of § 2(4) and were thus subject to valid mechanics liens having priority over a prior, recorded mortgage, despite the fact that the appliances could be removed with little or no damage to the real property. *Monroe Savings Bank v. First National Bank of Waterloo,* 50 A.D.2d 314, 377 N.Y.S.2d 827 (1976) (emphasis added). Thus, funds received from the installation of air conditioning and heating systems constitute funds received in connection with the improvement of real property. They are consequently trust assets within the meaning of the Article 3–A.

The Court next decides whether a trust fund created under state law is recognized in bankruptcy. In so doing, we necessarily decide whether the state created interest takes priority over a prior perfected security interest.

The commencement of a bankruptcy case creates an estate comprised of all legal and equitable interests of the debtor. 11 U.S.C. § 541(a)(1). Nevertheless, "property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." *Id.* § 541(d). The legislative history of § 541(d) indicates congressional intent as follows:

> Situations occasionally arise where property ostensibly belonging to the debtor will actually not be property of the debtor, but will be held in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company had sent the payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursed, the payment would actually be held in constructive trust for the person to whom the bill was owed. *This section and proposed 11 U.S.C. § 545 also will not affect various statutory provisions that give a creditor of the debtor a lien that is valid outside as well as inside bankruptcy, or that creates a trust fund for the benefit of a creditor of the debtor.*

H.R.Rep. No. 95–595, 95th Cong. 1st Sess. (1977) 368; Sen.Rep. No. 95–989, 95th Cong.2d Sess. 82, U.S.Code Cong. & Ad. News 5787, 5868, 6324 (emphasis added).

Accordingly, courts have held that the beneficial interests of subcontractors and materialmen held by the debtor in a statutory trust are not property of the debtor or of the bankruptcy estate. *Matter of Kennedy & Cohen, Inc.,* 612 F.2d 963, 965 (5th Cir.1980); *Selby v. Ford Motor Co.,* 590 F.2d 642, 645, 649 (6th Cir.1979); *In re Casco Electric Corp.,* 28 B.R. 191, 193–194 (Bankr.E.D.N.Y.1983), *aff'd,* 35 B.R. 731, 732 (E.D.N.Y.1983). Since the debtor, and subsequently the bankruptcy estate, hold mere legal title as trustee of the accounts receivable, the beneficial interest owned by the trust beneficiaries is unaffected by the filing of a bankruptcy petition. *Selby, supra,* 590 F.2d at 649.

Some commentators have contended that trusts of the kind described in the N.Y.Lien Law are actually statutory liens rather than true trusts. *E.g.,* 4 Collier on Bank-

ruptcy ¶ 67.25[2] (14th ed. 1974). If such interests were to be deemed liens instead of trusts, they would be subject to avoidance by the trustee to the extent that they had not been perfected or are not enforceable against a bona fide purchaser at the time of the filing of the bankruptcy petition. 11 U.S.C. § 545(2). The Court rejects this view of the trust section of the N.Y.Lien Law.

 *Aquilino v. United States,* 10 N.Y.2d 271, 219 N.Y.S.2d 254, 176 N.E.2d 826 (1961) is the leading case interpreting the trust provisions of the N.Y.Lien Law. The Court of Appeals held in this non-bankruptcy case that subcontractors and other statutory beneficiaries can enforce their interest whether or not they perfect by filing or notice of lien. *Id.,* 10 N.Y.2d at 277, 219 N.Y.S.2d at 259, 176 N.E.2d at 829. It further held that the proceeds "due or to become due" from a construction contract are to be applied first to the payment of statutory beneficiaries, the contractor having a beneficial interest "only in so much of the proceeds as remains after the claims of the beneficiaries have been settled." *Id.,* 10 N.Y.2d at 280, 282, 219 N.Y.S.2d at 261, 262–263, 176 N.E.2d at 832. This Court found *Aquilino* persuasive when it held that the preference section of the Bankruptcy Code did not apply to payments made to subcontractors within the preference period, unless "demonstrated not to be paid out of monies received from the improvements to which the subcontractors contributed." *Casco, supra,* 28 B.R. at 196. In so holding, this Court determined it was undeniable that such payments constituted trust assets under the N.Y.Lien Law. *Id.,* at 196. The Court finds *Aquilino* equally persuasive now in holding that a prior perfected secured creditor in accounts receivable is not entitled to its interest in that collateral until trust beneficiaries under Article 3–A of the N.Y.Lien Law have been satisfied in full from those assets traceable to the improvements to which they contributed as subcontractors.

■ The Court does not now decide whether the Bank possesses an administrative expense claim. The Bankruptcy Code contemplates the payment of administrative expense claims from property of the estate. *See* 11 U.S.C. § 726(a). Since accounts receivable which are traceable to services performed for the improvement of real property constitute trust assets and not property of the estate, administrative expense claimants have no interest in the proceeds of those accounts. In any event, the Bank's status as the holder of a perfected security interest, though inferior to the interest of a trust beneficiary, is superior to that of a mere administrative expense claimant. 3 Collier on Bankruptcy ¶ 507.-02[2] (15th ed. 1987). Presumably, it would therefore take as a secured creditor without the need to claim administrative expense treatment.

The Bank's application for an order directing the trustee to pay the Bank's secured claim in accounts receivable is denied.

So Ordered.