In the Matter of The **GIBBONS–GRABLE COMPANY**, Debtor.

**IRONWORKERS COMBINED FUND** and Carpenters Central Collection and Administrative Agency and Carpenters Local Union No. 69 and Bricklayers Local No. 6, Plaintiffs,

v.

**SOCIETY BANK OF EASTERN OHIO, N.A.,** Defendant,

and

**The Gibbons–Grable Assets Disposition Trust,** Intervenor.

Bankruptcy No. 686–00875.
Adv. No. 688–0021.

United States Bankruptcy Court,
N.D. Ohio.

May 25, 1989.

Randall Vehar, of Green, Haines, Sgambati, Murphy & Macala Co., Canton, Ohio, for plaintiffs

Barbara J. Arison, of Thompson, Hine and Flory, Cleveland, Ohio, for defendant.

Jeffrey T. Heintz, of Brouse & McDowell, Akron, Ohio, for intervenor.

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Chief Judge.

The court has before it for disposition separate motions to dismiss filed by Society Bank of Eastern Ohio, N.A. (Society) and The Gibbons–Grable Assets Disposition Trust (Trust).[1] A recitation of the procedural and factual background is deemed useful to a full understanding of the issues to be decided.

The Gibbons–Grable Company (Gibbons–Grable) was a party to a series of collective bargaining agreements by which it was obligated to make certain payments to or on behalf of an employee benefit plan, an employee benefit collection agency and two labor unions—the Ironworkers Combined Fund, the Carpenters Central Collection and Administrative Agency, the Carpenters Local Union No. 69 and the Bricklayers Local Union No. 6 (collectively, the Unions). Such contributions were for pension and medical benefits, withholdings from employees' wages of certain deductions for vacation, savings, apprenticeship and job training programs and union dues. Gibbons–Grable maintained various accounts with Society. Society, as a creditor of Gibbons–Grable, set off, on July 3, 1986, Gibbons–Grable's indebtedness to it in an amount finally adjusted to $667,867.28.

Gibbons–Grable filed for relief under Chapter 11 of Title 11 of the United States Code on July 7, 1986. A plan of reorganization was confirmed by this court on May 20, 1988, under which the Trust was created.

The Unions initiated this case by filing, in the Common Pleas Court of Stark County, Ohio, a complaint asserting that of the funds set off by Society, $265,740.00 were held in trust by Gibbons–Grable for the benefit of the Unions and/or their members and/or benefit funds represented by

---

1. Society has moved, in the alternative, for summary judgment.

the Unions. The Unions complain that, by its actions, Society wrongfully converted such funds to its own purposes. The Plaintiffs demand $265,740.00 in compensatory damages and $500,000.00 in exemplary damages, together with pre-judgment and post-judgment interest in the amount of 10% per annum. Additionally, the Plaintiffs demanded recovery for expenses and reasonable attorney's fees and further demanded a trial by jury.

Society removed the action to this court on February 26, 1988 and subsequently filed its answer denying the allegations.

Various procedural motions were filed and the parties ultimately agreed, through a stipulated order, to the intervention of the Trust, to the disposition of the matter by this court and to a schedule for the filing of motions to dismiss or, alternatively, motions for summary judgment. Such motions have been filed and are now ripe for decision, supporting and opposing memoranda having been filed.

## DISCUSSION

The Plaintiffs ground their action on Ohio Rev.Code § 4113.15(C) which provides in relevant part:

> In the absence of a contest, court order or dispute, an employer who is party to an agreement to pay or provide fringe benefits to an employee or to make any employee authorized deduction becomes a trustee of any funds required by such agreement to be paid to any person, organization, or governmental agency from the time that the duty to make such payment arises.

In interpreting the above provision, the court in *United Brotherhood of Carpenters and Joiners of America v. Paul Lugger Displays, Inc.*, 2 Ohio App.3d 190, 441 N.E.2d 581 (Franklin County, 1981), found that Section 4113.15(C) creates a constructive trust in favor of employees. The court stated that "[u]nder R.C. 4113.15(C), any unencumbered funds of the [employer] immediately [become] subject to a constructive trust for the benefit of [employees] at the time of the employer's obligation to pay." *United Brotherhood*, 441 N.E.2d at 584.

The court went on to note that a potential conflict existed between employees asserting a constructive trust over certain assets and creditors of the employer.

The object of the notice requirement of Article 9 of the Uniform Commercial Code is to provide protection for creditors who may need to know whether certain property is encumbered. R.C. 4113.15(C) would appear to leave prospective creditors without any way of knowing, other than through direct inquiry, that certain funds of any employer were actually held in trust for the benefit of its employees. R.C. 4113.15(C) is apparently intended to reserve for employees the fruits of their labors. Thus, the General Assembly has sought to protect both employees and creditors without specifying which group has a priority. *United Brotherhood*, 441 N.E.2d at 584.

The Trust, which has succeeded to the rights of the debtor, asserts in its motion to dismiss that pursuant to 11 U.S.C. § 544 it, not the Unions, takes priority as to any possible claim to the funds set off by Society.

11 U.S.C. § 544(a) provides:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
>
> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time

whether or not such a creditor exists; or

(3) a bona fide purchase of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

Section 544(a), known as the strong arm clause, gives to the trustee the rights, remedies and powers necessary to secure all the debtor's property for an equal distribution to all creditors according to the terms of the Bankruptcy Code. 4 Collier on Bankruptcy para. 544.01 (15th ed. 1988) (citations omitted).

It was said of the predecessor to [section 544(a)] under the former Act that it conferred upon the trustee "by force of law" the status of "the ideal creditor, irreproachable and without notice, armed *cap-a-pie* with every right and power which is conferred by the law of the state upon its most favored creditor who has acquired a lien by legal or equitable proceedings." If the description of the trustee's position under former section 70c was apt, it is even more so under the broader language of section 544(a). It is evident that this hypothetical status depends for meaning upon a substantive law that is not explicitly indicated but that is incorporated by reference. Therefore, the trustee's powers, in every case governed by section 544(a), are those which the state law would allow to a supposed or hypothetical creditor of the debtor who, as of the commencement of the case, has completed the legal (or equitable) processes for perfection of a lien upon all the property available for the satisfaction of his claim against the debtor.

4 Collier on Bankruptcy, para. 544.01 at 544–5 (citations omitted). *Accord, In re*

*General Coffee Corporation,* 828 F.2d 699 (11th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1470, 99 L.Ed.2d 699 (1988); *In re Tleel,* 79 B.R. 883 (9th Cir. B.A.P. 1987).

The 9th Circuit Court of Appeals in *In re North American Coin and Currency, Ltd.,* 767 F.2d 1573, 1575 (1985), *cert. denied,* 475 U.S. 1083, 106 S.Ct. 1462, 89 L.Ed.2d 719 (1986), in addressing the concept of constructive trusts in bankruptcy proceedings, stated:

While we agree that any constructive trust that is given effect must be a creature of [state] law, we cannot accept the position that the bankruptcy estate is automatically deprived of any funds that state law might find subject to a constructive trust.... A constructive trust is not the same kind of interest in property as a joint tenancy or a remainder. It is a remedy, flexibly fashioned in equity to provide relief where a balancing of interests in the context of a particular case seems to call for it. Moreover, in the case presented here it is an incohate remedy; we are not dealing with property that a state court decree has in the past placed under a constructive trust. We necessarily act very cautiously in exercising such a relatively undefined equitable power in favor of one group of potential creditors at the expense of other creditors, for ratable distribution among all creditors is one of the strongest policies behind the bankruptcy laws. (Citations omitted).

In applying 11 U.S.C. § 545(2)[2] to California Food and Agriculture Code Section 55631, which grants a farm producer a lien on his product and all processed forms of the product in the possession of the processor and which lien enjoys priority over all other liens, claims and encumbrances without any perfection requirements, the court in *In re Loretto Winery Limited,* 81 B.R. 573, 575 (9th Cir. B.A.P. 1987) held:

---

**2.** Statutory liens.

The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—

.    .    .    .    .

(2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists.

The Producer's Lien held by the Seller represents a secret lien. Mere attachment of this lien cannot defeat the rights of a good faith purchaser of the wine who had neither actual nor constructive notice of the lien's existence. Consistent with California policy, it would be unfair to enforce this lien against such innocent buyers. Therefore, we agree with the Bankruptcy Court that the Trustee, being in the shoes of a hypothetical bona fide purchaser, is authorized under Section 545(2) to avoid the Seller's lien. (Citations omitted).

Even though the court in *Loretto* was concerned with Section 545, this court finds that the underlying premise of the trustee's power in Section 545 to be applicable to Section 544. The purpose of both Sections 545 and 544 is to guarantee equal distribution to all creditors.

In the instant matter, the law of the state of Ohio will govern as to who is entitled to assert a claim to the funds set off by Society. However, as noted by the court in *United Brotherhood*, "the General Assembly has sought to protect both employees and creditors without specifying which group has a priority." The court, however, found this to be of little consequence in that the creditor in *United Brotherhood* had notice of the claims of the employees. *Id.* 441 N.E.2d at 584. In the case at bar, the Trust, pursuant to Section 544(a), is considered to be a lien creditor, *deemed to be without knowledge of any purported claims of the Unions.*

Additionally, the court finds it contrary to the provisions and the intent of the bankruptcy laws to construe the Ohio statute as granting a priority over the trustee's claim as a lien creditor. Ohio Rev.Code § 4113.15(C) purports to create a constructive trust in favor of employees which trust covers any unencumbered assets of the employer. Such an incohate claim cannot be found to be superior to that of the Trust. This court, along with that in *In re North American Coin and Currency, Ltd.,* "cannot accept the position that the bankruptcy estate is automatically deprived of any funds that state law might find subject to a constructive trust." 767 F.2d at 1575. To hold otherwise would be to ignore the priorities established by 11 U.S.C. § 507 to the detriment of the debtor's other unsecured creditors.

The Unions assert that the motions to dismiss should be denied and that they should be given an opportunity to conduct discovery. The Unions argue that through discovery they may be able to trace the funds due them and determine whether such funds are included in the money set off by Society. The court finds that discovery will not aid the Unions in defeating the superior claim of the Trust. The constructive trust created by Ohio Rev.Code § 4113.15(C) includes all unencumbered assets of an employer. The Unions, through discovery, cannot somehow reform this broad and general trust in such a way as to defeat the strong arm provisions of the Bankruptcy Code. Additionally, even if the Unions could establish that certain funds due them are identifiable, the Trust would still have priority to those funds in that it still would be deemed to be without knowledge of the Unions' claim.

Accordingly, the court finds that any possible claim the Unions may have to the funds set off by Society is defeated by the Trust pursuant to Section 544(a).

In light of the court's ruling herein, it need not address the other arguments raised by Society and the Trust in support of their motions to dismiss.

An order in accordance herewith shall issue.