**In re UNIVERSAL TREND, INC., Debtor.**

**No. 489–01022.**

United States Bankruptcy Court, N.D. Ohio.

May 30, 1990.

Joseph C. Lucci, Youngstown, Ohio, for trustee.

Richard G. Hardy, Cleveland, Ohio, for Northeast Ohio Dist. Council of Carpenters.

## MEMORANDUM OPINION

WILLIAM T. BODOH, Bankruptcy Judge.

The matter before the Court is the Motion of the NORTHEAST OHIO DISTRICT COUNCIL OF CARPENTERS for an order directing the Trustee to execute a check and enforce a statutory trust. The Trustee filed a brief in response to the Motion, and both parties filed supplemental memoran-

da. For the reasons set forth below, the Motion of NORTHEAST OHIO DISTRICT COUNCIL OF CARPENTERS is overruled.

## FACTS

Although the facts of this case have not been stipulated by the parties, the pleadings set forth the following facts of this case which are not in dispute. The Debtor, UNIVERSAL TREND, INC., filed its Petition for relief under 11 U.S.C. Chapter 7 on July 21, 1989. Prior to the filing of its Petition, the Debtor was engaged in the commercial installation of drywall. The Debtor employed members of the NORTHEAST OHIO DISTRICT COUNCIL OF CARPENTERS (the "Union") and agreed to comply with the terms of a collective bargaining agreement of the Union. As a part of this agreement, the Debtor agreed to pay working dues and fringe benefit contributions to the Union for the benefit of its members.

On one of its jobs, the Debtor was engaged as a subcontractor to GQ DRYWALL COMPANY on the Calvary Towers construction project in Youngstown, Ohio. At the time of the filing of the Petition, the Debtor was owed approximately Nineteen Thousand Dollars ($19,000.00) from GQ DRYWALL. The president of the Debtor, Mr. Thomas Behnke, indicates in an Affidavit filed with the Trustee's brief that the Union contacted him pre-petition and asked that he authorize GQ DRYWALL to issue a check payable to the Union and the Debtor as co-payees. Mr. Behnke refused to consent to such an arrangement; nonetheless, a check for Twelve Thousand Four Hundred Seventeen and 21/100 Dollars ($12,417.21) was issued by GQ DRYWALL to the Debtor and the Union as co-payees on July 24, 1989, three days after the Petition was filed.

The Union asserts that the Debtor is indebted to the Union in the amount of Seventeen Thousand Fifty–Three and 09/100 Dollars ($17,053.09), and that this amount is the subject of a statutory trust imposed by state law. That sum is composed as follows:

| | |
|---|---:|
| Health and Welfare/ Pension Contributions | $13,149.44 |
| Working Dues | 1,336.34 |
| Penalties | 2,567.31 |
| | $17,053.09 |

On November 30, 1989, this Court entered an Order directing the Union to appear and show cause why it should not be held in violation of the provisions of the automatic stay of 11 U.S.C. § 362. After a hearing on that Order, this Court concluded, in an Order dated December 26, 1989, that the issuance of the co-payee check did violate the provisions of the automatic stay and that there is an affirmative obligation upon creditors to restore the pre-petition *status quo* which was altered by a creditor's actions. *In re Dungey*, 99 B.R. 814, 816, 818 (Bankr.S.D.Ohio 1989). This Court also found that there was no evidence that the Union took any action after it had actual knowledge of the filing of the bankruptcy Petition, and, therefore, no sanctions would be imposed under 11 U.S.C. § 362(h). Finally, this Court authorized the Trustee to endorse and negotiate the July 24, 1989 check and to hold those funds in a separate interest-bearing account, but this Court "[l]eft for determination ... the extent to which [the Union] may be entitled to funds of the estate outside the priority set forth in the Bankruptcy Code...."

## DISCUSSION

Before reaching the primary issue of this case, the ramifications of this Court's previous findings should be emphasized. In the December 26, 1989 Order, this Court found that the issuance of the co-payee check was in violation of the provisions of the automatic stay imposed by 11 U.S.C. § 362. Post-petition actions taken by creditors to collect a debt from the debtor are void *ab initio* and have no legal effect, even if the creditor had no notice of the bankruptcy filing. *Dungey*, 99 B.R. at 816; *Kalb v. Feuerstein*, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940). Therefore, the fact that the check was issued to two payees is of no consequence. This discussion will assume that the funds in question were paid directly to Debtor. That the

938

funds are currently on deposit in a separate account is also of no significance, as that action was taken by order of the Court for administrative convenience. It is possible that the Union took no actual steps with regard to the check after the bankruptcy Petition was filed; nonetheless, it is undisputed that the manner in which the check was issued was a result of the Union's collection activity. GQ DRYWALL issued the co-payee check at the suggestion or request of the Union, and because this action occurred post-petition, it has no legal effect. The Union's arguments with respect to its rights in a co-payee check, including its reliance in *In re Duracraft Products, Inc.*, 26 B.R. 92 (Bankr.S.D.Ohio 1982), are without merit.

■ The primary issue in this proceeding is whether O.R.C. § 4113.15(C), through a purported statutorily imposed trust, gives the Union superior rights to the funds in question over the Trustee in bankruptcy. Put another way, does the trust created by Ohio statute prevent these moneys from becoming part of the bankruptcy estate? If the funds are in fact property of the estate under 11 U.S.C. § 541, then the trustee has the unimpaired right to use or distribute those funds according to applicable bankruptcy law. 11 U.S.C. §§ 363, 704.

It is the Union's primary contention that a statutory trust "arises in connection with an employer's duty to pay fringe benefits" as soon as those moneys are owed, pursuant to O.R.C. § 4113.15(C). That section provides as follows:

In the absence of a contest, court order or dispute, an employer who is party to an agreement to pay or provide fringe benefits to an employee or to make any employee-authorized deduction becomes a trustee of any funds required by such agreement to be paid to any person, organization, or governmental agency from the time that the duty to make such payment arises.

The Union contends that because the statutory trust arises simultaneously with the duty to make payment, the funds owed to the Union by Debtor in this case were the subject of this trust and never became

property of the bankruptcy estate. Therefore, the Union urges that the Trustee has no interest in the GQ DRYWALL check and that it should be endorsed over to the Union.

In its Motion, the Union cites *In re Davis*, 13 B.R. 456 (Bankr.S.D.Ohio 1980) for the proposition that "[w]here a statutory trust has been created under state law, it must be enforced in accordance with the law creating it." *Motion of Union* at 4. This Court fails to find any such proposition in the *Davis* case. Indeed, as the Trustee points out, *In re Davis* reaches a very different conclusion:

Even if a trust has been created under state law, the Bankruptcy Court has a special duty to decide whether or not it is a trust for purposes of the Bankruptcy Act. *Schlecht v. Thornton (In re Thornton)*, 544 F.2d 1005 (9th Cir.1976).... If a trust is created, it must exist before the incident creating the debt and separate from it. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328 [55 S.Ct. 151, 79 L.Ed. 393] (1934).

*Davis*, 13 B.R. at 460. This Court finds no authority in *In re Davis* for the application of a statutory trust in the manner proposed by the Union.

In its supplemental brief, the Union points to *Selby v. Ford Motor Co.*, 590 F.2d 642 (6th Cir.1979) as "controlling precedent." *Selby* was a case decided under the Bankruptcy Act in which the debtor company had performed work for Ford Motor Company. Upon completion of the project, the debtor company owed its subcontractors approximately the same amount which Ford owed to it, so it authorized Ford to pay the subcontractors directly. The final payments occurred within the Bankruptcy Act's preference period, and after the filing of the petition, the trustee in bankruptcy sought to recover these payments as preferences. The subcontractors claimed that the money was not recoverable as it constituted the corpus of a trust under the Michigan Builders Trust Fund Act, which, for purposes of this proceeding, is significantly similar to O.R.C. § 4113.15(C). The Sixth Circuit Court of Appeals considered various

interpretations of a statutory trust under the Bankruptcy Act and concluded:

> ... a state statute creating a builders trust fund should be given effect in bankruptcy. The beneficial interests of subcontractors and materialmen in a building fund should not be regarded as the property of the bankrupt debtor, at least so long as the beneficial interests are traceable.

*Selby,* 590 F.2d at 649.

Although the Union asserts that this case is controlling in this District under the Bankruptcy Code, the Sixth Circuit in *Selby* stated more than once that it would "look to the new Bankruptcy Act [the Code] and its legislative history to see if its treatment of statutory trusts should be used as *persuasive authority.*" *Selby,* 590 F.2d at 645 (emphasis added). The Trustee is correct in his assertion that any conclusions made in *Selby* regarding the application of the Bankruptcy Code are *dicta. See, Drabkin v. District of Columbia,* 824 F.2d 1102, 1110 n. 27 (D.C.Cir.1987).

The facts of the *Selby* case were also much different than those found in the present case. In *Selby,* the funds in question had already been paid to the subcontractors prior to the filing of the petition. The trustee in bankruptcy then sought to recover those funds as preferences, and the subcontractors relied on the State Trust Fund Act as a defense to the preference action. In the present case, the funds in question were paid to the Debtor post-petition, and the Union seeks to exclude these funds from the bankruptcy estate pursuant to state law. In *Selby,* the subcontractors clearly had a beneficial interest in the property which had previously been paid to them. Here, however, the Union's claim to an interest in the property is grounded entirely on the statutory trust. Furthermore, the already difficult question of identifying the trust fund property has been complicated in this case by the post-petition activity. As the Sixth Circuit noted in a recent discussion of *Selby:*

> It is beyond peradventure that, as a general rule, any party seeking to impress a trust upon funds for purposes of exemp-

tion from a bankrupt estate must identify the trust fund in its original or substituted form.... In the instant case, appellants have not attempted to trace their funds beyond the deposits into the commingled Salem Central Account, which evidence, standing alone, is insufficient to support their constructive trust theory of recovery.

*First Federal of Michigan v. Barrow,* 878 F.2d 912, 915 (6th Cir.1989). As a practical matter, tracing the funds in question creates no problem in the present case, as they are held in a separate account by the Trustee. But for the issuance of the check in violation of the stay, however, these funds would be in the general account of the Debtor. Whether the funds would be traceable there is somewhat speculative. The broader, if less relevant, issue is whether the funds would be traceable in Debtor's general account if the transfer was made pre-petition, while the Debtor was still operating. Such tracing seems unlikely.

█ Having determined that *Selby* is not dispositive of the present case, we return to a discussion of the underlying issues. From the moment a petition for relief is filed in bankruptcy, an estate is formed comprising "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). However, "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate ... only to the extent of the debtor's legal title to such property...." 11 U.S.C. § 541(d). Therefore, property which is shown to be held by the debtor in trust for the benefit of another is not included in the bankruptcy estate. In addition to written express trusts, the argument that property is excluded from the estate in this manner has been applied to constructive and statutory trusts, and its implications reach not only the estate provisions of § 541, but also the preference, statutory lien, priority, and dischargeability provisions of the Code. 11 U.S.C. §§ 547, 545, 507, 523; *See, Selby,* 590 F.2d at 645.

As the D.C. Circuit Court of Appeals summarized:

> In a very limited number of cases involving what would normally be considered a debtor-creditor relation, courts have found specific funds subject to a trust in favor of a creditor. In many of these cases, the trust is imposed by virtue of a state statute designed to provide additional protection to certain types of creditors, usually contractors. *See, e.g., Selby ... Carrier Corp. v. J.E. Sheckter Corp.*, 347 F.2d 153, 155 (2d Cir.1965), *cert. denied*, 382 U.S. 904 [86 S.Ct. 239, 15 L.Ed.2d 157] (1965). In cases not involving such a statute, the courts have uniformly required a contract irrevocably obligating the debtor both to segregate the "trust funds" from the debtor's own funds and to deliver the "trust funds" to the creditor.

*In re Auto–Train Corp., Inc.*, 810 F.2d 270, 274 (D.C.Cir.1987) (citations and footnote omitted). In addition, a distinct line of cases has developed concerning trust funds impressed for the payment of taxes to a taxing authority. *See, e.g., Drabkin*, 824 F.2d at 1110–1112.

Statutory provisions which create trusts for the benefit of a creditor continue to be recognized under the Bankruptcy Code as they were under the Bankruptcy Act. The legislative history to § 541 indicated as follows:

> This section [§ 541] and proposed 11 U.S.C. 545 also will not affect various statutory provisions that give a creditor of the debtor a lien that is valid outside as well as inside bankruptcy, or that creates [sic] a trust fund for the benefit of a creditor of the debtor. *See*, Packers and Stockyards Act, § 206, 7 U.S.C. 196.

S.REP. No. 989, 95th Cong., 2d Sess. (1978), *reprinted in* 1978 U.S.CODE CONG. & ADMIN.NEWS 5787, 5868. A problem arises, however, when state law, rather than federal law as cited in the Senate Report above, is the basis for the creation of the trust. As the leading bankruptcy commentator notes:

> Statutory enactments may operate to create trust funds in favor of certain specified persons. [citing *Selby*]. However, such trusts must stand the tests of being termed disguised priorities in violation of section 507 or statutory liens avoidable under section 545. Otherwise, this has, in the past[,] been generally regarded as a matter of local law to be followed by the bankruptcy court.

4 *Collier on Bankruptcy* § 541.13 (15th ed. 1990). In a case under the Bankruptcy Act, the United States District Court for Connecticut concluded:

> There is plainly a tension between the Bankruptcy Act's recognition of trusts created by state law and its preclusion of state-created priorities, and threading their way between the two principles has been a difficult matter for the courts.

*In re Faber's, Inc.*, 360 F.Supp. 946, 949 (D.Conn.1973).

With these concerns in mind, we now address the application of the Ohio statute. Twice O.R.C. § 4113.15(C) has been interpreted by the Bankruptcy Court of this District. In the first case, *In re Hayden (Toledo Area Constr. Workers Health and Welfare Plan v. Hayden)*, 44 B.R. 9 (Bankr.N.D.Ohio 1984), Judge Walter J. Krasniewski considered whether § 4113.15(C) created a fiduciary relationship under 11 U.S.C. § 523(a)(4).[1] Judge Krasniewski found that "the statutory language of O.R.C. 4113.15(C) does not create an express trust prior to an act of wrongdoing or apart from contractual obligations[,] and therefore, it does not convert the employer's status to that of fiduciary for purposes of the Bankruptcy Code." *Hayden*, 44 B.R. at 10.

The second bankruptcy case to apply the Ohio statute is *Matter of Gibbons–Grable Company (Ironworkers Combined Fund v. Society Bank of Eastern Ohio)*, 100 B.R. 901 (Bankr.N.D.Ohio 1989). In that case, as here, the debtor company was de-

---

**1.** 11 U.S.C. § 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity...."

linquent in making benefit payments to a union pursuant to a collective bargaining agreement, and it was also in default to Society Bank where it maintained several bank accounts. Just prior to the filing of the petition, Society Bank set-off nearly Seven Hundred Thousand Dollars ($700,-000.00) from accounts maintained by Gibbons–Grable. Subsequently, the union asserted that a portion of the funds set-off by Society was held in trust by Gibbons–Grable under O.R.C. § 4113.15(C). Chief Judge James H. Williams concluded that any possible claim of the union to the set-off funds was defeated by the trustee in bankruptcy pursuant to the strong-arm clause, 11 U.S.C. § 544(a).[2] Judge Williams considered the state court case *United Bhd. of Carpenters and Joiners of America v. Paul Lugger Displays, Inc.*, 2 Ohio App.3d 190, 441 N.E.2d 581 (1981), but he noted that in that case, the creditor had notice of the claims of the union, while under the strong-arm clause, the trustee is considered to be a perfected lien creditor without knowledge of any purported claims. *Gibbons–Grable*, 100 B.R. at 904; 11 U.S.C. § 544(a). Judge Williams then added:

> ... the court finds it contrary to the provisions and the intent of the bankruptcy laws to construe the Ohio statute as granting a priority over the trustee's claim as a lien creditor. Ohio Rev.Code § 4113.15(C) purports to create a constructive trust in favor of employees which trust covers any unencumbered assets of the employer. Such an inchoate claim cannot be found to be superior to that of the [trustee in bankruptcy]. This court, along with that in *In re North American Coin and Currency, Ltd,* "cannot accept the position that the bankruptcy estate is automatically deprived of any fund that state law might find subject to a constructive trust."

[767 F.2d 1573, 1575 (9th Cir.1985) *cert. denied,* 475 U.S. 1083 [106 S.Ct. 1462, 89 L.Ed.2d 719] (1986) ]. To hold otherwise would be to ignore the priorities established by 11 U.S.C. § 507 to the detriment of the debtor's other unsecured creditors.

*Gibbons–Grable,* 100 B.R. at 904.

■ The state court case cited in *Gibbons–Grable* is one of only two located by this Court interpreting O.R.C. § 4113.15(C). In *United Bhd.,* the Franklin County Court of Appeals found that pursuant to § 4113.15(C) "any unencumbered funds of the corporation immediately became subject to a constructive trust for the benefit of plaintiffs at the time of the employer's obligation to pay." *United Bhd.,* 2 Ohio App.3d at 192, 441 N.E.2d 581. However, the Court went on to note the conflict between this statute and the objectives of Article 9 of the U.C.C.:

> The object of the notice requirement of Article 9 of the Uniform Commercial Code is to provide protection for creditors who may need to know whether certain property is encumbered. R.C. 4113.15(C) would appear to leave prospective creditors without any way of knowing, other than through direct inquiry, that certain funds of an employer were actually held in trust for the benefit of its employees. R.C. 4113.15(C) is apparently intended to reserve for employees the fruits of their labors. Thus, the General Assembly has sought to protect both employees and creditors without specifying which group has a priority.

*United Bhd.,* 2 Ohio App.3d at 193, 441 N.E.2d 581.

The other Ohio case to interpret § 4113.15(C) supports the conclusions made in *Gibbons–Grable.* In *First National Bank of Akron v. Saalfield Publishing Co.,* No. 8572 (Ohio Ct.App., 9th Dist., Jan.

---

**2.** 11 U.S.C. § 544(a) provides "The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists...."

19, 1978) (available on Lexis), perfected lien creditors initiated an action to collect against the collateral of a bankrupt publishing company. The Graphic Arts International Union intervened, claiming it had priority in certain assets of the company pursuant to its collective bargaining agreement and § 4113.15(C). The court reviewed that section and the collective bargaining agreement and concluded:

> We seriously doubt whether subsection (C) creates a trust as claimed by the Union. Assuming arguendo that it does, the "trust" is created at, "the time the duty to make such payment arises." ... [I]n conjunction with the terms of the collective bargaining agreement previously mentioned, we can only conclude that Saalfield's obligation concerning vacation pay arose after the bank's security interests were perfected and the real estate mortgage became effective. R.C. 4113.15 establishes no preference in favor of the union.

As a matter of state law, then, any rights that the union has as the beneficiary of a statutory trust under § 4113.15(C) are subordinate to the rights of a perfected lien creditor. In the present case, the time that the duty to make benefit payments arose was post-petition at the moment when Debtor received funds from GQ DRYWALL. The Trustee became invested with all the powers of a perfected lien creditor at the moment of filing, and, therefore, the Trustee has a superior claim to the funds. 11 U.S.C. § 544.

Reconciling the state trust fund statute with the Bankruptcy Code is not a difficult matter in the present case. Any trust in favor of the Union would have arisen, if at all, after the filing of the Petition in bankruptcy.[3] The filing of a petition in a voluntary case "constitutes an order for relief" under the chapter in which the petition was filed. 11 U.S.C. § 301. Section 4113.15(C) impresses a trust only "[i]n the absence of a contest, court order or dispute...." It is the finding of this Court that in the present case, the § 301 order for relief constitutes a "court order" which prevents the application of O.R.C. § 4113.15(C).

This conclusion is consistent with the broad scope which Congress intended to give § 541.

> The House and Senate Reports on the Bankruptcy Code indicate that § 541(a)(1)'s scope is broad. Most important, in the context of this case, § 541(a)(1) is intended to include in the estate any property made available to the estate by other provisions of the Bankruptcy Code. *See,* HR Rep. No. 95–595 p. 367 (1977). Several of these provisions bring into the estate property in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced.

*United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205, 103 S.Ct. 2309, 2313–14, 76 L.Ed.2d 515 (1983).

The Union here urges this Court to recognize a statutory trust from the moment the duty to make benefit payments to the Union arises. Such a "trust" would be imposed despite the fact that (a) no actual express trust document exists, (b) no person is designated as a trustee, except in the statute, and (c) there is neither a designation of the specific trust property nor a separate trust bank account. Indeed, the "trust property" would most likely be commingled in the "trustee's" general account. We adopt the conclusions of the state appellate courts that it is doubtful whether, under generally accepted principles of trust law, O.R.C. § 4113.15(C) actually creates something which could be called a trust and that this statute clearly undermines the strong policy of Article 9 of the U.C.C. which sought to abolish silent liens. The Bankruptcy Code often takes account of property rights which are determined by state law, as for example, the perfection of security interests and exempt property of the Debtor. Nonetheless, the state law

---

**3.** The Union may contend that the trust arose under the statute "from the time the duty to make such payment arises," and that this means the moment the employees performed services for Universal Trend. A trust, however, must have a corpus, and the only funds the Union has identified as a trust corpus in this case came into the hands of the Debtor post-petition. Any trust could not have come into existence before this time.

must attend to the realities and technicalities of the property rights created, or else those rights will be dismissed as disguised priorities under the Bankruptcy Code. Simply calling certain funds a "trust" no more creates a trust than calling a loan "perfected" creates a mortgage.

Courts have recognized this policy when interpreting the dischargeability provisions of the Bankruptcy Act and Code and have declared ineffective provisions which purport to create a "trust" at the moment the duty to make payment arises. Such trusts *ex maleficio*, arising from the wrongs themselves, establish no fiduciary relationship. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153 79 L.Ed. 393 (1934). Similarly, the statutory trust here arises from the wrong itself and lacks the qualities of an actual, express trust.

Finally, the applicability of § 4113.15(C) raises constitutional issues. Giving effect to a "trust" when one has not been literally created, awards to a state legislature favored creditor a super-bankruptcy priority which contravenes those priorities established by the Bankruptcy Code. Under our Constitution, bankruptcy laws are exclusively the purview of Congress, and federal law is supreme over that of the states. U.S. Const. art. I, § 8, cl. 4; art. VI, cl. 2. The priority scheme established by the Bankruptcy Code takes precedence over any state created priorities.

It is … clear that the Bankruptcy Act of 1978 [the Code] explicitly defined the order of creditor priority and declared the congressional intent of federal supremacy over declared but conflicting state law orders of priority. *See, e.g., Danning v. Bozek (In re Bullion Reserve of North America)*, 836 F.2d 1214 (9th Cir.), *cert. denied*, [486] U.S. [1056], 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988); *In re Kennedy & Cohen, Inc.*, 612 F.2d 963 (5th Cir.), *cert. denied*, 449 U.S. 833, 101 S.Ct. 103, 66 L.Ed.2d 38 (1980); *Gulf Petroleum v. Collazo*, 316 F.2d 257 (1st Cir.1963); *Elliott v. Bumb*, 356 F.2d 749 (9th Cir.), *cert. denied*, 385 U.S. 829, 87 S.Ct. 67, 17 L.Ed.2d 66 (1966).

*First Federal*, 878 F.2d at 915. With respect to the present case, Congress has already allocated a high priority to employees and employee related contributions. 11 U.S.C. § 507(a)(3), (4). These priorities should not be supplanted by provisions of state law.

An appropriate Order shall issue.

### ORDER

The matter before the Court is the Motion of the NORTHEAST OHIO DISTRICT COUNCIL OF CARPENTERS for an order directing the Trustee to execute a check and enforce a statutory trust. For the reasons set forth in the accompanying Memorandum Opinion, the Motion of NORTHEAST OHIO DISTRICT COUNCIL OF CARPENTERS is overruled. The funds held by the Trustee from the co-payee check are part of the bankruptcy estate and may be disposed of by the Trustee in accordance with his duties under the Bankruptcy Code.

IT IS SO ORDERED.