In re IMPERIAL TILE AND CARPET, INC. Debtor.

IMPERIAL TILE AND CARPET, INC.

v.

TRUSTEES OF THE TILE, TERRAZZO, MARBLE AND PRE–CAST PANEL WORKERS INDUSTRY INSURANCE FUND.

Bankruptcy No. HK 88 00338.
Adv. No. 88 214.

United States Bankruptcy Court,
W.D. Michigan.

Dec. 2, 1988.

Robert B. Borsos, Kalamazoo, Mich., for debtor.

Lorrey J. Cochran, Southfield, Mich., for defendant.

## OPINION

LAURENCE E. HOWARD,
Bankruptcy Judge.

## MICHIGAN BUILDERS TRUST FUND ACT—TRACING

The defendant insurance fund is entitled to receive contributions from Imperial Tile and Carpet under the collective bargaining agreement between Imperial and its employees. Imperial failed to pay certain sums due to the insurance fund under the contract. The insurance fund sued. The parties entered into a consent judgment, but Imperial paid only a portion due under that agreement. The insurance fund initiated collection proceedings. Imperial then paid $5,836.66, the remaining balance, on November 4, 1987. The amount was due as a result of work performed by the debtor's employees on various building construction projects on which the debtor was a subcontractor. Subsequently, Imperial filed a petition under chapter 11 of the Bankruptcy Code. As debtor in possession

Imperial has initiated this adversary proceeding in order to recover as a preference the sums paid on November 4, 1987.

■ The defendant has moved for summary judgment on the argument that it received no preference, instead it merely received what was due to it under the Michigan Builders Trust Fund Act, which was not property of the estate. That Act provides that:

In the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes.

M.S.A. § 26.331 [M.C.L.A. § 570.151]. It would appear that obligations incurred under the laborers' collective bargaining agreement may also be subject to the trust fund. *Detroit Metropolitan Area Executive Committee v. Leto Construction Company*, 423 F.Supp. 701 (E.D.Mich. 1976). Therefore, the question is whether this is a payment of trust fund monies that would not be voidable as a preference under *Selby v. Ford Motor Co.*, 590 F.2d 642 (6th Cir.1979). In deciding this question, I am assuming that the payment to the fund would not be monies traceable from the building owners.

■ In *Selby*, the Sixth Circuit held that monies held under the Michigan Builders Trust Fund Act are trust funds and any payment to a trust beneficiary cannot be recovered as a preference. However, the Sixth Circuit also wrote that:

The beneficial interests of subcontractors and materialmen in a building fund should not be regarded as the property of the bankrupt debtor, at least so long as the beneficial interests are traceable. In the instant case tracing creates no problem. The funds subject to the statutory trust were paid to the subcontractor as trust beneficiaries prior to bankruptcy.

590 F.2d at 649. The exact meaning of this language might be open to question. If by tracing the Sixth Circuit meant that the only funds that would be exempt from recovery as a preference would be those that could be traced from the building owner to the contractor and then to the beneficiaries, that would be a question of fact which would preclude summary judgment. However, if the Sixth Circuit meant that you have to be able to trace the funds only when they had not been paid to the beneficiaries prepetition and were still in the bankruptcy estate's custody, then summary judgment could be granted here. I believe that the Sixth Circuit meant the latter.

I say this because in *Selby* some of the funds were not traceable back to the owner. In *Selby,* Ford Motor Co. contracted with the Frimberger Corporation to do some construction work. Frimberger in turn contracted with 16 subcontractors. When the work was done,

> Instead of waiting to be paid by Ford before paying the subcontractors, Frimberger decided to authorize Ford to pay the subcontractors directly and to deduct this amount from Ford's indebtedness. Frimberger executed a series of written authorizations on December 8 and 15, 1970, and January 14 and 27, 1971, permitting Ford to pay all sixteen subcontractors directly. By February 11, 1971, Ford had issued checks to fourteen of the sixteen subcontractors. Frimberger itself paid the other two. Ford then paid Frimberger the remaining balance due on the construction contract. All sixteen of the checks to the subcontractors, both the fourteen drawn by Ford and the two by Frimberger were issued within four months of the filing of the petition in bankruptcy by Frimberger.

590 F.2d at 644. The checks written by Frimberger to the remaining two contractors could not be traced back to funds paid by Ford to Frimberger because Ford didn't pay Frimberger until after the two checks were · written. Therefore, technically speaking, these two checks could not have been a traceable transfer of trust res from trustee to beneficiary. Nonetheless, the Sixth Circuit held that these two payments were no less immune than the transfers from Ford to the subcontractors directly. The lesson of *Selby* is that the trust funds need only be traceable when they are in the custody of the estate as of filing, see 590 F.2d at 645, citing to *Hawkins v. Blake,* 108 U.S. 422, 435–36, 2 S.Ct. 804, 813–14, 27 L.Ed. 775 (1882), but that strict tracing is not necessary when the transfers have been completed prepetition.

For the above reasons the defendant's motion to dismiss is granted.