908 F.2d 52
 23 Collier Bankr.Cas.2d 493, Bankr. L. Rep. P 73,535
In re Mitchell V. ARNOLD and Kathy A. Arnold, individually
and d/b/a partners in the partnership of Arnold's
Electric Company, Debtors.
Samuel K. CROCKER, Trustee, Plaintiff-Appellee,
v.
BRAID ELECTRIC COMPANY, Defendant-Appellant.
 No. 89-6085.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 30, 1990.
Decided July 11, 1990.
 
 1
 Samuel K. Crocker (argued), Nashville, Tenn., for plaintiff-appellee.
 
 
 2
 Marc T. McNamee (argued), Diane S. Kuhn, Dearborn & Ewing, Nashville, Tenn., for defendant-appellant.
 
 
 3
 Before MARTIN and BOGGS, Circuit Judges, and JOINER, Senior District Judge.*
 
 
 4
 JOINER, Senior District Judge.
 
 
 5
 On May 21, 1987, Arnold's Electric Company and its partners, Mitchell and Kathy Arnold, filed a petition for bankruptcy pursuant to Chapter 7 of the Bankruptcy Act, 11 U.S.C.A. Secs. 701, et seq. (West 1979 & Supp.1990). Samuel Crocker was appointed trustee (Trustee) for the estate, and on October 28, 1987, the Trustee filed a complaint against Braid Electric Company (Braid) alleging that certain monies paid to Braid after the Chapter 7 petition was filed were property of the estate and should be turned over to the Trustee. After conducting a trial on stipulated facts, the bankruptcy court held for the Trustee, and this decision was affirmed by the district court. Braid now appeals.
 
 I.
 
 6
 In 1986, the State of Tennessee entered into a contract with the J. Harold Shankle Construction Company (Shankle) for the renovation of the Middle Tennessee State University Alumni Building (the Project). Subsequently, Shankle and Arnold's Electric Company (Arnold) executed a subcontract whereby Arnold would perform the electrical work on the project. Arnold, in turn, obtained necessary materials from Braid pursuant to an open account between them. There was no contract between Shankle and Braid.
 
 
 7
 On May 18, 1987, Shankle gave telegraphic notice of default under the subcontract to Arnold for a failure to adequately staff the project. When Arnold did not respond to the notice, Shankle took over Arnold's work on the project on May 19, and Shankle deemed the subcontract terminated as of May 20.[1] On May 21, 1987, Arnold filed its petition for bankruptcy. At this time, $61,756.14 had been earned by Arnold under the subcontract with Shankle. Of this amount, ten percent ($6,175.61) was held as retainage pursuant to Section 4 of the subcontract. The balance of $55,580.55 represented money (progress payments) owed to Arnold pursuant to its completed progress on the project. As of that same date, Arnold was indebted to Braid in the amount of $69,820.84, for materials supplied by Braid to Arnold for the project.
 
 
 8
 On May 22, 1987, Shankle issued two checks to Braid in the amounts of $18,294.11 and $43,462.03. At this point in time, neither Shankle nor Braid was aware of Arnold's having filed a bankruptcy petition. Shankle's payments to Braid were made in a manner consistent with Shankle's prior experience on jobs in which materials suppliers had not been paid by subcontractors. These payments were due to Arnold's failure to pay Braid for materials used on the project, and Shankle wanted to avoid Braid filing a claim against the retainage or against the bond Shankle posted on the project. In addition, Shankle was obligated under Section 4.4.1 of its contract with the State of Tennessee to pay for materials purchased by its subcontractors on the project. Section 4.4.1 provides:
 
 
 9
 Unless otherwise provided in the Contract Documents, the Contractor shall provide and pay for all labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, transportation, and other facilities and services necessary for the proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work.
 
 
 10
 In its findings of fact and conclusions of law, the bankruptcy court, relying upon In re Universal Builders, Inc., 53 B.R. 183, 186 (Bankr.M.D.Tenn.1985), held that unpaid progress payments held by the contractor on construction projects are the property of the estate of a bankrupt subcontractor, but retainage held by the contractor is not. Consequently, pursuant to 11 U.S.C.A. Secs. 549 and 550 (West 1979 & Supp.1990), the court held that the trustee could recover unpaid progress payments due Arnold from a post-petition initial transferee of these funds. The bankruptcy court concluded that of the $61,756.14 Shankle paid to Braid, $55,550.55 constituted progress payments earned by Arnold on the project.[2] Since Braid was the initial transferee of these funds, the trustee could recover this amount from Braid. The conclusion by the bankruptcy court concerning the nature of the funds paid to Braid was based on the following finding:
 
 
 11
 Braid, as transferee of the progress payments owed to the Debtor, is required to turn these payments over to the Trustee. The Court finds that the evidence was insufficient to prove that there was an independent agreement between Braid and Shankle. Braid's claim against Shankle for funds arose only because of the Debtor's relationship with Shankle. Proof did not show that the contract between Shankle and the Debtor had been effectively terminated and replaced by a new contract between Shankle and Braid. In fact, the funds paid under the "independent contract" were identical to the total of progress payments and retainage funds owed by Shankle to the Debtor.
 
 
 12
 The bankruptcy court also rejected setoff and recoupment arguments made by Braid, holding that Braid had no standing to assert these defenses. The district court affirmed this decision.
 
 II.
 
 13
 Braid argues that funds paid to it by Shankle do not represent Arnold's property that Shankle transferred to Braid but, rather, Shankle's own funds paid under an independent obligation Shankle owed to Braid. Since these funds are not the property of the Arnold estate, the Trustee cannot recover the funds from Braid under the Bankruptcy Act. The Trustee responds that the bankruptcy court correctly found that Shankle paid Braid the progress payments earned by Arnold, plus the retainage, and that he may recover from Braid that part of the funds which represents the unpaid progress payments ($55,580.55).
 
 
 14
 A trustee may avoid a transfer of property of the bankrupt party's estate that occurs after the filing of a bankruptcy petition. 11 U.S.C.A. Sec. 549(a) (West Supp.1990). If avoidance is appropriate under section 549, the trustee can recover the property from the initial transferee of the property. 11 U.S.C.A. Sec. 550(a)(1) (West 1979). It is not disputed that Shankle's payments to Braid occurred after Arnold filed for bankruptcy, and that Braid was an "initial transferee" of these payments as defined under the Bankruptcy Act. The critical question is whether $55,580.55 of the amount paid to Braid constitutes property of Arnold. The bankruptcy court concluded that it does, based upon its factual finding that Shankle's debt to Braid arose solely out of Arnold's relationship with Shankle. This factual finding can be set aside by this court only if it is clearly erroneous. Knoxville Teachers Credit Union v. Parkey, 790 F.2d 490, 491 (6th Cir.1986); Fed.R.Bankr.P. 8013. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire record, is left with the definite and firm conviction that a mistake has been made. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948).
 
 
 15
 Based on the stipulated facts upon which this case was tried, including the contract between the State of Tennessee and Shankle, this court concludes that the bankruptcy court's finding, that Shankle's payments to Braid arose solely out of the relationship between Shankle and Arnold, is clearly erroneous. The bankruptcy court did not refer to section 4.4.1 of the contract between the State of Tennessee and Shankle, which clearly obligates Shankle to pay Braid for materials used on the project which were supplied by Braid. This contract imposed an obligation on Shankle to pay Braid independent of any relationship Shankle had to Arnold. Indeed, the parties stipulated that one reason Shankle made the payments to Braid was because Shankle was obligated to do so under its contract with the State of Tennessee.
 
 
 16
 In Selby v. Ford Motor Co., 590 F.2d 642 (6th Cir.1979), this court recognized this independent obligation owed a materials supplier by a contractor even in the absence of express contract language or state statute establishing such an obligation:
 
 
 17
 The construction lender, owner, disbursing agent, contractor, subcontractor or surety company which furnishes a payment bond may not have a direct contractual relationship with a materialman down the line. But courts and legislatures have increasingly found that the parties have an independent legal duty arising from reasonable commercial expectations to see to the proper application of construction funds. In the absence of statute, courts have declared that construction funds in the hands of a contractor are held subject to a constructive trust or an equitable assignment or an equitable lien. Even in the absence of a state builders statute, federal bankruptcy courts in a variety of situations have refused to apply the property, preference and statutory liens sections of the Bankruptcy Act to favor unsecured creditors over the equitable claims of subcontractors and materialmen to the proceeds of a construction project in the hands of a bankrupt contractor.
 
 
 18
 Selby, 590 F.2d at 647-48 (footnotes omitted). In this case, Shankle has an obligation to Braid arising out of the Tennessee/Shankle contract which is just as independent of any other obligations as the implied obligation discussed in Selby. Therefore, the bankruptcy court's finding that Shankle had no independent obligation to Braid is clearly erroneous.
 
 
 19
 In light of Shankle's payment to Braid, arising out of an obligation independent of any obligations owed to Arnold, there is no basis upon which to conclude that the funds paid by Shankle are the property of Arnold's estate. The court does not agree with the significance the bankruptcy court and the trustee attach to the fact that Shankle's payments to Braid are equal to the progress payments Shankle owed to Arnold plus the retainage. The funds paid to Braid came from Shankle's general accounts, and not from segregated funds earmarked for Arnold. If section 4.4.1 of the contract between the State of Tennessee and Shankle did not exist, then this fact might carry more weight. However, absent any evidence that Shankle used money that belonged to Arnold to pay Braid, this fact represents nothing more than coincidence.
 
 
 20
 Shankle's payment to Braid does not constitute property of Arnold's estate; therefore, pursuant to sections 549 and 550 of Title 11, the trustee cannot recover these funds as there has been no post-petition transfer of property of the estate. Given this conclusion, it is unnecessary to address Braid's other arguments concerning setoff and recoupment. In addition, the court stresses that it reaches no conclusions as to what further actions, if any, could or could not be taken by Shankle, the trustee, or Braid.
 
 
 21
 Accordingly, the decision of the district court is REVERSED, and this case is REMANDED with instructions that judgment should be entered in favor of Braid.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 This was based on Section 8 of the subcontract, which provided that Shankle could terminate the subcontract upon 48 hours written notice if, among other possible grounds, Arnold failed to adequately staff the project
 
 
 [2]
 The bankruptcy court held that the remaining $6,175.61 paid to Braid represented the retainage held by Shankle