WILLIAM A. NORRIS, Circuit Judge:
 

 The bankruptcy trustee of debtor Hamilton Taft & Company (Taft) appeals the bankruptcy court’s dismissal of his suit to recover from S & S Company (S & S) payments Taft
 
 *287
 
 made to the Internal Revenue Service (IRS) on behalf of S & S. The trustee also appeals the court’s denial of his motion for partial summary judgment. The question presented in both aspects of the appeal is whether the money Taft paid the IRS on behalf of S & S was ever the property of the debtor within the meaning of Bankruptcy Code § 547(b), 11 U.S.C. § 547(b).
 

 I
 

 The relevant facts are not in dispute.
 
 [1]
 
 Taft contracted with S & S and 286 other clients to pay the clients’ federal, state and local payroll taxes and prepare all the relevant reports. As consideration, S & S paid Taft the amount of the taxes in advance of the due date of the taxes which enabled Taft to get the benefit of the use of the funds during the interval between the date it received the funds from its clients and the date it paid the taxes. Thus, Taft was paid for its services from the “float” on S & S’s money.
 

 The funds Taft received from S & S and its other clients were not placed in separate accounts with the exception of funds from two clients which had specifically contracted for segregated treatment of their funds. All other funds were commingled and used by Taft for its own purposes until paid to the taxing authorities as the taxes became due. Approximately $6 billion of client money flowed through Taft’s accounts annually. However, because of bad investments and other improper handling of these funds, Taft came to have dramatic cash flow problems and fell behind in making tax payments on behalf of its clients. It then began selectively withholding federal payroll taxes during the first month of each quarter in order to use those funds to pay delinquent taxes from the prior quarter. Taft attempted to conceal these facts from its clients. But in March, 1991, a former Taft comptroller disclosed the improper diversion of funds, and Taft’s clients filed the involuntary bankruptcy petition that gave rise to this action.
 

 In March, just prior to the filing of the bankruptcy petition, S & S was notified that it was going to be audited and requested that Taft provide proof that S & S’s payroll taxes were up to date through the end of January. In truth, Taft had withheld two payments from the IRS that had been due on January 17 and 24. However, in order to conceal this from S & S, Taft immediately issued checks for the missed payments in the amount of $7,632,269 and sent S & S proof of payment. As a result, when the bankruptcy petition was filed, S & S had only $158,929 in claims against Taft for unpaid taxes. Taft’s other clients were less fortunate — their unpaid taxes total over $90 million dollars, $50.5 million of which is attributable to taxes that were not paid for January.
 

 The trustee filed this action to recover from S & S the January tax payments made by Taft on behalf of S & S to the IRS. S & S moved for dismissal under Rule 12(b)(6), arguing that the funds paid to the IRS were held in statutory trust under I.R.C. § 7501 and, therefore, were not property of the debtor. The trustee, in turn, moved for partial summary judgment seeking a determination that the funds used to pay the IRS were property of the debtor under 11 U.S.C. § 547(b). The bankruptcy court dismissed the complaint and denied the plaintiffs motion for partial summary judgment. The district court affirmed the decision. The trustee appealed the dismissal and the denial of partial summary judgment.
 
 [2]
 

 We review both decisions de novo.
 
 In re Stevens,
 
 107 B.R. 702, 705 (9th Cir. BAP 1989) (decision to dismiss complaint under Rule 12(b)(6) reviewed de novo);
 
 In re New England Fish Co.,
 
 749 F.2d 1277, 1280 (9th
 
 *288
 
 Cir.1984) (summary judgment reviewed de novo).
 

 II
 

 Section 547(b) permits the trustee to recover transfers of the debtor’s property when the transfer occurred within the 90-day “preference period” prior to the filing of the bankruptcy petition, if the transfer was made for the benefit of one of its creditors.
 
 [3]
 
 If the requirements of § 547(b) are met, the trustee may recover the value of the property transferred from either the creditor on whose behalf the transfer was made or from the party to whom the transfer was made. 11 U.S.C. § 550(a)(1). In this case, there is no dispute that the tax payments the trustee seeks to avoid were made for the benefit of S & S within the preference period. However, S & S argues that § 547(b) does not apply because the tax payments Taft transferred to the IRS were not property of the debtor, but rather funds held in a statutory trust for the benefit of the IRS.
 

 S & S argues that the funds paid to the IRS by Taft were funds held in trust pursuant to Internal Revenue Code § 7501, which provides: “[wjhenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of the tax so collected or withheld shall be held to be a special fund in trust for the United States.” 26 U.S.C. § 7501(a).
 

 It is clear that the funds S & S withheld from its employees were impressed in a statutory trust when collected.
 
 Begier v. Internal Revenue Service,
 
 496 U.S. 53, 61-62, 110 S.Ct. 2258, 2264, 110 L.Ed.2d 46 (1990). However, after collection, the trust-fund taxes were transferred to Taft without requiring Taft to segregate those funds and hold them in trust. Under normal principles of trusts, if a trustee transfers trust property to a third party, the third party holds that property free of trust unless the trustee committed a breach of trust in conveying the property. Restatement (Second) of Trusts § 283 (1959); IV Austin W. Scott & William F. Frateher, The Law of Trusts § 283 (4th ed. 1989). Thus, absent a breach of trust, when a trustee enters into a contract with a third party, any trust funds transferred to that third party in consideration of the contract are transferred free of trust unless the contract provides that the transferred funds shall be held in trust.
 

 In this case, S & S does not contend that it committed a breach of trust by conveying the trust-fund taxes to Taft as consideration for Taft’s promise to pay S & S’s tax obligations and prepare the appropriate reports. Nor does S & S attempt to show that it arranged with Taft for the transferred funds to be held in trust. While two of Taft’s clients arranged to have their trust-fund tax payments kept in segregated accounts, S & S and the other clients did not. Instead, Taft extensively commingled all of the funds it received and treated the funds as its own assets, using them to pay its operating expenses and investing the funds for its own benefit. Therefore, under ordinary principles of trust, Taft did not hold the funds in trust. Thus, the funds were property of the debtor and the January tax payments were subject to avoidance.
 
 [4]
 

 
 *289
 
 S & S argues, however, that such common law restrictions were abrogated by Congress in enacting § 7501, relying upon the Supreme Court’s decision in
 
 Begier.
 
 In that case, an airline declared bankruptcy after paying certain withholding taxes to the IRS. The airline had not kept all of the trust-fund taxes in a segregated account, but had paid a substantial portion of the taxes out of its general funds. The trustee attempted to recover from the IRS all of the taxes paid during the preference period. The IRS claimed that the taxes paid by the bankrupt employer were never property of the debtor, but instead were funds held in trust for the IRS pursuant to I.R.C. § 7501. Under common law principles, the IRS would have been compelled to trace the funds it was paid back to the original trust-fund taxes withheld from the employees’ pay. However, the Court observed the legal characteristics of a statutory trust may be defined by Congress in a way that is “radically different from the common-law paradigm.” 496 U.S. at 62, 110 S.Ct. at 2264. The Court noted that, contrary to common law trusts, § 7501 created a trust in the
 
 amount
 
 withheld, not in the actual property withheld. It concluded, therefore, that Congress had intended to abrogate the strict common law requirement that the putative trust funds paid to the IRS be directly traceable to the actual dollars withheld from the employees. Instead, the Court stated, Congress intended that “[t]he courts should permit the use of reasonable assumptions under which the Internal Revenue Service, and other taxing authorities, can demonstrate that the amounts of withheld taxes are still in the possession of the debtor at the commencement of the case.”
 
 Id.
 
 at 65, 110 S.Ct. at 2266 (quoting 124 Cong.Rec. 32393, 32417 (1978) (remarks of Rep. Edwards)). The Court held that a reasonable assumption in the case before it was that “[t]he debtor’s act of voluntarily paying its trust-fund tax obligation ... is alone sufficient to establish the required nexus between the ‘amount’ held in trust and the funds paid.”
 
 Id.
 
 at 66-67, 110 S.Ct. at 2267.
 

 S & S argues that
 
 Begier
 
 compels the conclusion that the funds paid to the IRS in this case were funds held in statutory trust. However, the holding of
 
 Begier
 
 is not directly applicable to this ease because this case does not involve a debtor “voluntarily paying
 
 its
 
 trust-fund tax obligation.”
 
 Id.
 
 at 66, 110 S.Ct. at 2267 (emphasis added). Instead, Taft was paying the tax obligation of a third party pursuant to a contract. S & S argues that the fact that there was an intermediary in this case is not a significant difference and that the rule of
 
 Begier
 
 still applies — once the funds are paid to the IRS, they are conclusively presumed to have been the trust property. However, the fact that the debtor in this case is a third party to whom trust-fund taxes were conveyed as consideration for a contract is of paramount importance.
 

 The exception to the common law treatment of trusts elaborated in
 
 Begier,
 
 was justified by the language and purpose of § 7501. However, these factors do not require the exception to the common law that S & S is seeking in this case. The statutory language clearly indicates that the statutory trust is created for the benefit of the IRS, not the taxpayer.
 
 See
 
 I.R.C. § 7501. We should not, therefore, easily impute to Congress an
 
 *290
 
 intention to alter the common law of trusts when doing so would not materially further the interests of the beneficiary of the statute.
 

 Nor should we extend the holding in
 
 Begier
 
 more broadly than is necessary to accomplish its purposes when doing so necessarily undermines the Bankruptcy Code’s core principle of equality of distribution among creditors. In
 
 Begier,
 
 the Court found an exception to the common law of trusts was necessary to effectuate the congressional intent that the IRS not be deprived of funds that had been specifically withheld from employees’ pay for the express purpose of payment to the IRS. Had the trust-fund taxes been considered property of the debtor in
 
 Begier,
 
 the IRS would have been compelled to receive partial payment of the taxes due like all the other creditors. However, when the bankrupt debtor is a third party and the employer remains solvent, the concerns of
 
 Begier
 
 dissolve. The ability of the IRS to collect the taxes owed by Taft’s clients is simply not implicated in this case. S & S and Taft’s other clients remain liable to the IRS and, as far as we know, are financially able to make the payments. The IRS will be able to collect the taxes owed to it regardless of whether the trustee is able to avoid Taft’s last-minute payments on behalf of some of its creditors. More importantly, the money returned to the estate through the avoidance is money that can be paid to the other creditor-employers and used to pay their outstanding tax obligations.
 
 [5]
 

 In sum,
 
 Begier
 
 does not address the circumstances of this case. In the absence of any clear policy reason for extending
 
 Begier,
 
 we apply the common law of trusts and hold that the funds paid to the IRS on behalf of S & S were not held in statutory trust and, thus, the payments are avoidable under 11 U.S.C. § 547(b). Therefore, we hold that district court erred in granting the motion to dismiss.
 

 Ill
 

 The trustee also appeals the district court’s denial of the trustee’s motion for partial summary judgment. Rather than address the merits of this portion of the appeal, S & S merely argues that this court lacks jurisdiction to review a denial of summary judgment.
 

 In general, the denial of a motion for summary judgment is not a final order since the consequence of the denial is that the case will go to trial. Ordinarily, review of such a denial is sought through an interlocutory appeal. However, when interlocutory appeal is not taken, a denial of summary judgment is reviewable upon entry of a final judgment.
 
 Moran v. Aetna Life Ins. Co.,
 
 872 F.2d 296, 300-01 (9th Cir.1989). While we will often decline to engage in the “pointless academic exercise” of reviewing a denial of summary judgment after a trial on the merits,
 
 Lum v. City and County of Honolulu,
 
 963 F.2d 1167, 1169-70 (9th Cir.1992), such a case is not presented here.
 

 There are no disputed issues of material fact.
 
 [6]
 
 We have held as a matter of law that if S & S transferred its trust-fund taxes to Taft without requiring Taft to hold those funds in trust, the trustee may recover from S & S the funds paid to the IRS on its behalf during the preference period. S
 
 &
 
 S disavows any attempt to show that transfer of funds created any common law trust. Therefore, partial summary judgment should be entered in favor of the trustee, holding that the funds paid to the IRS were the property of the debtor under § 547(b).
 

 The district court’s dismissal of the complaint is REVERSED. Upon REMAND,
 
 *291
 
 the district court shall enter partial summary judgment in favor of the trustee.
 

 [1]
 

 . These facts are derived from the affidavits provided in the context of the trustee’s motion for partial summary judgment. While the summary judgment papers provided details to supplement the pleadings, the appellee does not dispute these additional facts and agrees that they do not materially affect the outcome of the motion to dismiss.
 

 [2]
 

 . The trustee also argues that in ruling on the motion to dismiss, the bankruptcy judge improperly considered evidence outside the complaint without converting the motion to dismiss into a motion for summary judgment. Because we reverse the dismissal on other grounds and order the district court to enter partial summary judgment in the trustee's favor, we need not address this issue.
 

 [3]
 

 . In full, the statute provides:
 

 the trustee may avoid any transfer of an interest of the debtor in property—
 

 (1) to or for the benefit of a creditor;
 

 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 

 (3) made while the debtor was insolvent;
 

 (4) made—
 

 (A) on or within 90 days before the date of the filing of the petition; or
 

 (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
 

 (5)that enables such creditor to receive more than such creditor would receive if—
 

 (A) the case were a case under chapter 7 of this title;
 

 (B) the transfer had not been made; and
 

 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
 

 11 U.S.C. § 547(b).
 

 [4]
 

 . S & S asserts that under ordinary principles of trusts, the trust funds remain trust funds even while in possession of an intermediary, citing
 
 Begier
 
 and
 
 E. John Vito, Inc. v. First American Bank of Maryland,
 
 Bankr.L.Rptr. 74,012, 1991 WL 56335 (Bankr.D.Md.1991). In both these
 
 *289
 
 cases, trust funds were held in a bank account. S & S apparently contends that placing trust funds in a bank account is equivalent to paying out the funds to a third party as consideration for a contract. However, depositing trust funds in a bank account is not a transfer of trust property to a third party within the meaning of § 283 of the Restatement.
 

 S & S also relies upon
 
 Selby v. Ford Motor Co.,
 
 590 F.2d 642 (6th Cir.1979). But
 
 Selby
 
 did not involve money transferred by the statutory trustee to a third party. Instead, the case involved a Michigan statute which stated that all money paid into a building contract fund was to be held in trust for the owner of the building and the subcontractors. In
 
 Selby,
 
 the trustee-contractor arranged to have some of the construction fees paid directly to the beneficiaries, rather than having the funds pass through the contractor’s accounts first. The issue before the court was whether federal bankruptcy law would recognize a state-law statutory trust. The court held as a matter of federal law that funds in state-created statutory trusts were not property of the debtor under § 547(b).
 
 Id.
 
 at 647. It also implicitly held that, as a matter of state law, the money paid to the subcontractors was property that the contractor held in a state-law statutory trust. The court did not consider whether the fact that the money was never paid directly to the statutory trustee deprived the funds of their statutory trust status under the Michigan statute.
 

 [5]
 

 . Nor does this case involve an attempt by the trustee to recover payment from the IRS. We need not decide, therefore, whether the policy concerns animating
 
 Begier
 
 would forbid the trustee from collecting the avoided payments from the IRS rather than from S & S. Instead, we only need to decide whether S & S is to receive preferential treatment simply because of the fortuitous accident that its taxes, rather than some other client’s, were paid just before the bankruptcy petition was filed.
 

 [6]
 

 . S & S asserts in passing that there may remain a factual dispute about S & S's ability to trace the funds through Taft's accounts. Since our holding does not depend on whether such a tracing is possible or not, any such factual dispute is not material.