**In re PAY + PLUS PAYROLL ADMINISTRATORS, Inc., Debtor.**

**Andrea P. Bauman, Plaintiff,**

**v.**

**Emerald Electric, Inc., Defendant.**

**Bankruptcy No. 8:05–bk–13056–PMG. Adversary No. 8:07–ap–379–PMG.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

March 31, 2008.

 

Noel R. Boeke, Holland & Knight, LLP, Tampa, FL, for Plaintiff.

Stephany P. Sanchez, Cox & Sanchez, St. Petersburg, FL, for Defendant.

Guillermo A. Ruiz, Guillermo A. Ruiz PA, St. Petersburg, FL, for Debtor.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY FINAL JUDGMENT

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for hearing to consider the Motion for Summary Final Judgment filed by the Defendant, Emerald Electric, Inc.

The Plaintiff, Andrea Bauman, as Chapter 11 Trustee, commenced this action by filing a Complaint to Avoid and Recover Preferential Transfer. Generally, the Plaintiff asserts that the Defendant received a payment from the Debtor in the amount of $6,096.90 within ninety days prior to the filing of the Debtor's bankruptcy petition, and that the payment is avoidable as a preferential transfer pursuant to § 547(b) of the Bankruptcy Code.

In response, the Defendant contends that the transfer is not avoidable under § 547(b), primarily because the payment does not constitute a transfer of "an interest of the debtor in property," as required by the statute. The Defendant further asserts that there is no genuine issue as to any material fact, and that it is entitled to the entry of a summary judgment in its favor as a matter of law.

### Background

Prior to May 30, 2005, the Debtor, Pay + Plus Payroll Administrators, Inc., was engaged in the business of providing payroll and other administrative services to its

clients. The services performed by the Debtor included (1) the preparation and processing of its clients' payroll; (2) the preparation of its clients' 940 and 941 tax returns, and the remittance of the taxes due; and (3) the procurement of its clients' workers' compensation insurance and health insurance. (Main Case, Doc. 29, ¶ 3).

The Defendant was a client of the Debtor.

It appears that the Debtor sent periodic invoices to the Defendant that included a breakdown of the amounts due for federal and state taxes, workers' compensation premiums, and other costs, including the fees charged by the Debtor for servicing the account. The Defendant then made weekly payments to the Debtor of the amounts set forth in the invoices.

According to the Defendant, for example, it made a series of five payments to the Debtor on January 4, 2005, January 11, 2005, January 25, 2005, February 1, 2005, and February 11, 2005. The Defendant contends that the payments were made to the Debtor as the Defendant's agent, "for payments due IRS for withholding, Florida Department of Revenue for SUTA and FUTA and workman's comp carrier." The payments totaled the sum of $6,506.24. (Affidavit of Kenneth J. McKinnon, Jr., ¶ 2).

On April 19, 2005, the Defendant learned that the Debtor had not used the remitted funds to pay certain taxes owed to the Internal Revenue Service. Consequently, a representative of the Defendant went to the Debtor's offices to obtain information regarding the unpaid tax liabilities. As a result of the meeting, the Debtor gave the Defendant a check dated April 19, 2005 (Check Number 1384) in the amount of $6,096.90. (Doc. 17, p. 2). The Defendant contends that the check represents a return of the funds that the Debtor had held in trust for payment to the Internal Revenue Service, the State Department of Revenue, and the workers' compensation carrier. (Doc. 8).

The Plaintiff asserts, however, that the check issued to the Defendant was drawn upon the Debtor's general operating account. According to the Plaintiff, the account "contained money from many different clients of the Debtor and the Debtor utilized the account for many different purposes." The account had not been established as a trust account. (Affidavit of Andrea P. Bauman, ¶ 5).

In any event, after receiving the check, the Defendant paid the aggregate amount of $6,241.10 to the Internal Revenue Service, the Florida Department of Revenue, and AM Comp for unpaid taxes and workers' compensation costs. (Affidavit of Kenneth J. McKinnon, Jr., ¶ 3). The payments were made between May 3, 2005, and October 26, 2005.

On June 29, 2005, approximately nine weeks after the check was issued to the Defendant, the Debtor filed a petition under Chapter 11 of the Bankruptcy Code.

## Discussion

The Defendant contends that the transfer that occurred on April 19, 2005, was not a transfer of "property of the debtor," because the funds at issue had been held by the Debtor "in trust" for the payment of the Defendant's business liabilities. The Defendant asserts that there is no genuine issue as to any material fact, and that it is entitled to the entry of a summary judgment as a matter of law.

Rule 56(c) of the Federal Rules of Civil Procedure, as made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that a summary judgment may be entered if "there is no genuine issue as to any material fact" and the "moving party is entitled

to a judgment as a matter of law." Fed. R. Civ.P. 56(c).

The moving party has the burden of establishing its right to summary judgment. Further, in determining entitlement to summary judgment, it is well-established that a court must view all evidence and make all reasonable inferences in favor of the party opposing the motion. *In re Transit Group, Inc.,* 332 B.R. 45, 51 (Bankr.M.D.Fla.2005) (citations omitted).

In this case, the Court finds that the Defendant's Motion for Summary Final Judgment should be denied.

The Defendant asserts that the funds that it initially paid to the Debtor were held in trust by the Debtor because of the application of 26 U.S.C. § 7501, which provides in part:

> **§ 7501. Liability for taxes withheld or collected**
>
> **(a) General rule.**—Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States.

26 U.S.C. § 7501(a). To support its assertion that the funds paid to the Debtor were trust funds, and not property belonging to the Debtor, the Defendant also relies on the decision of the United States Supreme Court in *Begier v. Internal Revenue Service,* 496 U.S. 53, 59, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990)("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.' ").

In *Morin v. Frontier Business Technologies,* 288 B.R. 663 (W.D.N.Y.2003), however, the District Court addressed similar claims made by a defendant in a preference action, and determined that the amounts at issue were not trust funds. In

that case, as in the case currently before the Court, the debtor (Aapex Systems, Inc.) had been engaged in the business of providing payroll services to employers, and the trustee for the debtor's bankruptcy estate commenced multiple preference actions against the debtor's former clients. The purpose of the preference actions was "to avoid various transfers made by Aapex either to the IRS or state taxing authorities in order to pay the clients' past due payroll taxes or related penalties and interest, or directly to the clients, so that they could pay those past due taxes themselves." *Morin v. Frontier Business Technologies,* 288 B.R. at 665–66.

In *Aapex,* the District Court found that the amounts transferred by the debtor were not trust funds because they had been commingled with other funds and therefore were not traceable to any particular client. *Id.* at 673. The District Court then addressed the impact of § 7501 of the Internal Revenue Code, and determined:

> [E]ven if the funds transferred from Ceres [the client] to Aapex were trust funds at the time of *that* transfer, once they became commingled with other funds, dissipated, and rendered untraceable, the trust was not destroyed, but rather, it remained with Ceres.... Thus, even if Aapex *should* have segregated the funds it received from Ceres, the fact that is did not means that the § 7501 trust did not "follow" the dissipated funds, but remained with Ceres, the taxpayer, which remained obligated to hold the amount of withheld funds in trust for the United States.

*Id.* at 674(Emphasis in original). The Court ultimately determined that the transferred funds were property of the debtor, and that the transfer was subject to avoidance under § 547(b) of the Bankruptcy Code.

Further, in another case involving a debtor that had operated a payroll service,

the trustee also filed a preference action to recover payments made by the debtor to the Internal Revenue Service on behalf of the debtor's clients. *In re Hamilton Taft & Co.*, 53 F.3d 285 (9th Cir.1995). In *Hamilton Taft*, as in *Aapex*, the Court found that the funds paid to the Internal Revenue Service were not held in trust, and that the transfer was avoidable by the trustee of the debtor's estate under § 547(b). *In re Hamilton Taft & Co.*, 53 F.3d at 290.

> While two of Taft's clients arranged to have their trust-fund tax payments kept in segregated accounts, S & S and the other clients did not. Instead, Taft extensively commingled all of the funds it received and treated the funds as its own assets, using them to pay its operating expenses and investing the funds for its own benefit. Therefore, under ordinary principles of trust, Taft did not hold the funds in trust. Thus, the funds were property of the debtor and the January tax payments were subject to avoidance.

*In re Hamilton Taft & Co.*, 53 F.3d at 288. The Ninth Circuit also found that the Supreme Court's decision in *Begier, supra,* was readily distinguishable, because the debtor in *Begier* was paying its own tax obligation, with the result that the funds that it had collected were trust funds, whereas the debtor in *Hamilton Taft* was paying the tax obligation of a third party pursuant to a written contract. *Id.* at 289. See also *Morin v. Frontier Business Technologies,* 288 B.R. at 673.

### Application

In the case presently before the Court, the issue is whether a payment from the Debtor to the Defendant within ninety days prior to the filing of the bankruptcy petition constituted a preferential transfer under § 547(b) of the Bankruptcy Code. The Defendant filed a Motion for Sum-

mary Judgment and asserted that transferred funds were not property of the Debtor, as required by the statute. According to the Defendant, it had originally paid the amount at issue to the Debtor in trust, to enable the Debtor to pay the Defendant's tax liabilities and other business obligations.

The Chapter 11 Trustee submitted an Affidavit in opposition to the Defendant's Motion for Summary Judgment. In the Affidavit, the Trustee stated that the check issued to the Defendant was drawn on the Debtor's general operating account. The Trustee further stated:

> After reviewing the Debtor's bank account records in connection with bringing this and many other preference actions, it appears that the bank account contained money from many different clients of the Debtor and the Debtor utilized the account for many different purposes. The account that the payment was made from was not segregated in any fashion and was not set-up as a trust account.

(Doc. 20; Declaration of Andrea P. Bauman, ¶¶ 4, 5). Since the funds initially paid by the Defendant to the Debtor were commingled with funds paid by other clients, the funds that were later transferred by the Debtor to the Defendant cannot be traced to any particular source. Pursuant to the authorities discussed above, therefore, the Court cannot determine that the Debtor held the funds in trust for the Defendant, or that the funds were not property of the Debtor at the time of the transfer.

Accordingly:

**IT IS ORDERED** that the Motion for Summary Final Judgment filed by the Defendant, Emerald Electric, Inc., is denied.